UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

_____

**DENNIS PERKINS,**
   **Plaintiff,**

**v.**

**CITY OF ATTLEBORO, RONALD CHURCHILL,
individually and in his capacity as Chief of the
Attleboro Fire Department, VINCENT BAILEY,
individually and in his capacity as an Attleboro
Firefighter, BRIAN DUBUC, individually and in his
capacity as an Attleboro Firefighter, GERALD
BROGAN, individually and in his capacity as an
Attleboro Firefighter, JEFFREY PARHAM, individually
and in his capacity as an Attleboro Firefighter,
CRAIG LANDER, individually and in his capacity
as an Attleboro Firefighter, WALTER GUERTIN,
individually and in his capacity as an Attleboro
Firefighter, GLEN LIVESEY, individually and in
his capacity as Deputy Chief of the Attleboro
Fire Department, STEPHEN MARCOTTE, individually
and in his capacity as an Attleboro Firefighter,
EDWARD GUILLETTE, individually and in his
capacity as an Attleboro Firefighter, JAMES
WASHINGTON, individually and in his capacity
as an Attleboro Firefighter, MICHAEL WILSON,
individually and in his capacity as an Attleboro
Firefighter, DAVID HAZZLEHURST, individually and
in his capacity as an Attleboro Firefighter, and
ATTLEBORO FIREFIGHTERS UNION 848,**
   **Defendants.**

_____

## COMPLAINT AND JURY DEMAND

### JURISDICTION

1.   Jurisdiction of this Court is invoked pursuant to Title 28 U.S.C.S. §§1331, 1343, Federal Rules of

Civil Procedure 18(a) and the doctrine of pendent jurisdiction pursuant to 28 U.S.C. § 1367, and is founded on

the existence of deprivation of federal civil rights, constitutional rights, federal and state law claims deriving

from a common nucleus of facts.

2.  The Plaintiff's position as Captain of the Attleboro Fire Department was adversely affected based upon defamatory statements made by Defendant coworkers, superior officers, and Union officials, due to his actual and/or perceived lack of support for the extension of service of Attleboro Fire Department Chief Ronald Churchill. Defendants engaged in a conspiracy and pattern of hostility and retaliation resulting from the Plaintiff's actual and/or perceived lack of support for Defendant Churchill.

3.  The Plaintiff was harmed and wrongfully disciplined in his position as Captain of the Attleboro Fire Department due to a conspiracy engaged in by the Defendants, intended to cover up misconduct of and prevent disciplinary action against Defendant Vincent Bailey; Defendants conspired to intentionally, maliciously and deliberately malign the Plaintiff with the intent to adversely affect and interfere with the Plaintiff's employment and contractual relationships and promotional advancement, including fabricating, disseminating, exchanging, and publicizing defamatory remarks about the Plaintiff, and creating a hostile work environment, which retaliatory and hostile conduct has continued through the time of filing this action.  The conspiracy and pattern of hostility and retaliation engaged in by the Defendants was intended to and did so harm the Plaintiff and was designed to prevent the Plaintiff from promotional advancement within the Attleboro Fire Department.

4.  This action in law and equity seeks redress for civil rights violations, retaliation, civil conspiracy to interfere with the Plaintiff's employment and promotional advancement, deprivation of constitutional rights, invasion of privacy, negligence, negligent supervision of employees, defamation, tortious interference with contractual and business relationships, breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, violation of the Plaintiff's right to privacy, and interference with contractual rights in violation of public policy, which public policy of the Commonwealth of Massachusetts mandates that an employee's rights in employment not be interfered with on account of said individual's beliefs, association, or expression of speech.

5.  This action arises under the United States Constitution and Title 42 U.S.C.S. §§1983 and 1985, the Massachusetts Civil Rights Act, Mass. Gen. L. Ch. 12§§11H-I, Mass. Gen. L. Ch. 41§100,  Mass. Gen. L. Ch. 258, Mass. Gen. L. Ch. 214, Mass. Gen. L. Ch. 66A, and Massachusetts common law claims.

6.  The Defendants have caused harm to the Plaintiff, including, but not limited to damages to the Plaintiff's employment, loss of reputation, loss of promotional advancement in employment, loss of employment opportunities, financial loss, emotional and physical damages. This is an action for monetary damages, punitive damages, attorneys fees and costs.

7.  At all times material hereto, the Defendants acted under color of state law and pursuant to authority vested in the Defendants by the City of Attleboro.

8.  At all times material hereto, the Defendants acted under and pursuant to the policies, practices, customs and usages of the City of Attleboro.

9.  The Defendants' acts and/or edicts may fairly be said to represent the official policy, practice, custom and usage of the City of Attleboro.

## PARTIES

10.  The Plaintiff, Dennis Perkins, is an individual residing in Taunton, Bristol County, Massachusetts.

11.  The Defendant, City of Attleboro, hereafter "Defendant Attleboro", is a municipal corporation organized under the laws of the Commonwealth of Massachusetts, with principal place of business located at 77 Park Street, Bristol County, Massachusetts.

12. Defendant Attleboro operates under and pursuant to the laws, policies, practices and customs of the Commonwealth of Massachusetts.

13.  Defendant Attleboro acts under and pursuant to color of authority vested in it by the Commonwealth of Massachusetts.

14.  The Defendant, Ronald Churchill, hereafter "Defendant Churchill", is an individual residing in Attleboro, Bristol County, Massachusetts.

15.  At all times relevant hereto, Defendant Churchill acted individually and as agent and employee of Defendant Attleboro in his official capacity as Chief of the Attleboro Fire Department.

16.  At all times relevant hereto, Defendant Churchill implemented and executed official governmental policy under color of law which interfered with the Plaintiff's employment with Defendant Attleboro.

17.  The Defendant, Vincent Bailey, hereafter "Defendant Bailey", is an individual residing in Dorchester, Suffolk County, Massachusetts.

18.  At all times relevant hereto, Defendant Bailey acted individually and as agent and employee for the Defendant Attleboro in his official capacity as Firefighter for the Attleboro Fire Department.

19.  The Defendant, Brian Dubuc, hereafter "Defendant Dubuc", is an individual residing in South Yarmouth, Barnstable County, Massachusetts.

20.  At all times relevant hereto, Defendant Dubuc acted individually and as agent and employee of the Defendant Attleboro in his official capacity as a Firefighter for the Attleboro Fire Department.

21.  At all times relevant hereto, Defendant Dubuc acted as agent and servant of the Attleboro Firefighters Union 848, in his official capacity as Union President, and implemented and executed official Union policies and protocols which interfered with the Plaintiff's employment with Defendant Attleboro.

22.  The Defendant, Gerald Brogan, hereafter "Defendant Brogan", is an individual residing in Attleboro, Bristol County, Massachusetts.

23.  At all times relevant hereto, Defendant Brogan acted individually and as agent and employee of the Defendant Attleboro in his official capacity as a Firefighter for the Attleboro Fire Department.

24.  The Defendant, Jeffrey Parham, hereafter "Defendant Parham", is an individual residing in Norton, Bristol County, Massachusetts.

25.  At all times relevant hereto, Defendant Parham acted individually and as agent and employee of the Defendant Attleboro in his official capacity as a Firefighter for the City of Attleboro Fire Department.

26.  The Defendant, Craig Lander, hereafter "Defendant Lander", is an individual residing in Attleboro, Bristol County, Massachusetts.

27.  At all times relevant hereto, Defendant Lander acted individually and as agent and employee of the Defendant Attleboro in his official capacity as a Firefighter for the Attleboro Fire Department.

28.  The Defendant, Walter Guertin, hereafter "Defendant Guertin", is an individual residing in Attleboro, Bristol County, Massachusetts.

29.   At all times relevant hereto, Defendant Guertin acted individually and as agent and employee of the Defendant Attleboro in his official capacity as a Firefighter for the Attleboro Fire Department.

30.   At all times relevant hereto, Defendant Guertin acted as agent and servant of the Attleboro Firefighters Union 848, in his official capacity as Union Representative, and implemented and executed official Union policies and protocols which interfered with the Plaintiff's employment with Defendant Attleboro.

31.   The Defendant, Glen Livesey, hereafter "Defendant Livesey", is an individual residing in Attleboro, Bristol County, Massachusetts.

32.   At all times relevant hereto, Defendant Livesey acted individually and as agent and employee of Defendant Attleboro in his official capacity as Deputy Chief of the Attleboro Fire Department.

33.   At all times relevant hereto, Defendant Livesey implemented and executed official governmental policy under color of law which interfered with the Plaintiff's employment with Defendant Attleboro.

34.   The Defendant, Stephen Marcotte, hereafter "Defendant Marcotte", is an individual residing in Attleboro, Bristol County, Massachusetts.

35.   At all times relevant hereto, Defendant Marcotte acted individually and as agent and employee for the Defendant Attleboro in his official capacity as Firefighter for the Attleboro Fire Department.

36.   The Defendant, Edward Guillette, hereafter "Defendant Guillette", is an individual residing in Attleboro, Bristol County, Massachusetts.

37.   At all times relevant hereto, Defendant Guillette acted individually and as agent and employee for the Defendant Attleboro in his official capacity as Firefighter for the Attleboro Fire Department.

38.   The Defendant, James Washington, hereafter "Defendant Washington", is an individual residing in Randolph, Norfolk County, Massachusetts.

39.   At all times relevant hereto, Defendant Washington acted individually and as agent and employee for the Defendant Attleboro in his official capacity as Firefighter for the Attleboro Fire Department.

40.   The Defendant, Michael Wilson, hereafter "Defendant Wilson", is an individual residing in Attleboro, Bristol County, Massachusetts.

41.  At all times relevant hereto, Defendant Wilson acted individually and as agent and employee for the Defendant Attleboro in his official capacity as Firefighter for the Attleboro Fire Department.

42.  At all times relevant hereto, Defendant Wilson acted as agent and servant of the Attleboro Firefighters Union 848, in his official capacity as Union Representative, and implemented and executed official Union policies and protocols which interfered with the Plaintiff's employment with Defendant Attleboro.

43.  The Defendant, David Hazzlehurst, hereafter "Defendant Hazzlehurst", is an individual residing in Attleboro, Bristol County, Massachusetts.

44.  At all times relevant hereto, Defendant Hazzlehurst acted individually and as agent and employee for the Defendant Attleboro in his official capacity as Firefighter for the Attleboro Fire Department.

45.  The Defendant, Attleboro Firefighters Union 848, is an employee labor organization operating under the laws of the Commonwealth of Massachusetts, pursuant to Mass. Gen. L. Ch. 150E, with principal place of business located at Attleboro, Bristol County, Massachusetts.

## FACTS COMMON TO ALL

46.  The Plaintiff was appointed as a permanent Firefighter/Paramedic for the City of Attleboro Fire Department, hereafter "Department", on July 24, 2000.

47.  The Plaintiff's position with the Department is a civil service position pursuant to Massachusetts General Laws Chapter 31, and Plaintiff's employment position is protected by law in accordance with basic merit principles, including fair treatment, protection from coercion and arbitrary and capricious actions, and assuring proper regard for privacy and basic rights.

48.  The Plaintiff was promoted to the position of Captain of the Department on December 1, 2002, and has served as a Captain since December 1, 2002.

49.  The Appointing Authority on behalf of the Department is the Mayor of the City of Attleboro.

50.  In 2009, Defendant Ronald Churchill, hereafter "Defendant Churchill", sought to retain his position as Chief of the Department notwithstanding the fact that he had attained the maximum age for that position.

51.  To the Defendant Attleboro Firefighters Union 848, hereafter "Defendant Union", by way of written correspondence, the Plaintiff submitted his opposition to the extension of Defendant Churchill's service, requesting the Defendant Union to take a position in favor of its members whose promotional advancement would be hindered by the requested extension.

52.  The Defendant Union took a position contrary to the interests of its membership in favor of Defendant Churchill's extension of service, and did not inform the Plaintiff that it was assisting Defendant Churchill in his efforts to retain his position as Chief.

53.  Defendant Dubuc, to whom the Plaintiff had provided his letter in opposition, did not advise the Plaintiff that he was assisting Defendant Churchill in Defendant Churchill's efforts to retain his position as Chief.

54.  On receipt of the Plaintiff's letter in opposition, Defendant Dubuc informed the Plaintiff that this would only be harmful to the Plaintiff.

55.  Defendant Churchill became aware of the Plaintiff's written opposition to his efforts to extend his service.

56.  Defendant Dubuc, Defendant Attleboro and Defendant Union were successful in their efforts to assist Defendant Churchill in his request to extend his service.

57.  Defendant Attleboro presented special legislation, enacted as Chapter 54 of the Acts of 2009, which was approved on August 4, 2009, permitting Defendant Churchill to retain his position as Chief until June 30, 2010.

58.  On a Civil Service Eligibility List established August 1, 2008, effective during the period of Churchill's extension of service until June 30, 2010, the Plaintiff was ranked second on the eligibility list as a candidate for promotion to Chief.

59.  On a Civil Service Eligibility List established August 1, 2009, effective during the period of Churchill's extension of service until June 30, 2010, the Plaintiff was ranked first on the eligibility list as a candidate for promotion to Deputy Chief.

60.  During his extended service period in 2009, Defendant Churchill chose an individual as his replacement for promotion to Chief, which individual was ranked third on the Civil Service Eligibility List, below the Plaintiff.

61.  In order for Defendant Churchill's choice to be promoted to Chief to succeed Defendant Churchill, the Plaintiff would have to be bypassed in accordance with Massachusetts General Laws Chapter 31 §27.

62.  The Plaintiff had no record of discipline and no record of negative performance reviews or evaluations, therefore sufficient justification would be required in order to bypass him for promotion pursuant to Mass. Gen. L. Ch. 31 §27.

63.  At all times relevant hereto, Plaintiff's training as provided by Defendant Attleboro consisted of on the job training and conversations as issues arose; Defendant Attleboro and Defendant Churchill provided no formal training of Department officers and no formal leadership training.

64.  Since 2007 and through July 4, 2009, the Plaintiff's regular assignment was to the Twin Village Fire Station.

65.  On July 4, 2009, the Plaintiff was assigned to fill in for the regularly assigned Captain at the South Attleboro Fire Station, which was not the Plaintiff's regular duty assignment; the Plaintiff had filled in periodically for the regularly assigned Captain beginning in April of 2009.

66.  In the moments preceding the July 4, 2009 roll call scheduled for the early morning at the change of the shifts, the Plaintiff had rotated assignments for the shift employees, and this regular rotation of assignments was his responsibility as Captain.

67.  At said date and time, during an informal discussion in the kitchen of the South Attleboro Fire Station, Defendant Bailey, who did not want to perform the assignment rotated to him, began a verbal altercation with the Plaintiff which was witnessed by others present in the kitchen area, during which Defendant Bailey yelled, paced, muttered, and loudly expressed his disagreement over the assignment, and a verbal exchange ensued between the Plaintiff and Defendant Bailey, during which the Plaintiff made repeated attempts to get Defendant Bailey to settle down.

68.  Defendant Bailey's tantrum was so loud that the Plaintiff was required to raise his tone in order to be audible to Defendant Bailey, and another Captain present during Defendant Bailey's tantrum also made repeated attempts to get Defendant Bailey to calm down and go with the Plaintiff to private quarters to resolve the issue.

69.  Defendant Bailey refused to follow either the Plaintiff's or the other Captain's directives to take the matter to private quarters and refused to resolve his issues.

70.  Defendant Bailey contacted Defendant Livesey at approximately 7:35AM on the morning of July 4, 2009, and was ordered to remain at the station by the Defendant Livesey.

71.  Despite Defendant Livesey's order and despite the fact that Defendant Bailey was assigned to the shift that day, Defendant Bailey left the South Attleboro Fire Station and did not return for the rest of the day.

72.  Defendant Bailey returned to the Department headquarters subsequently with two Union officials, Steven Brennick and Defendant Guertin, because he had been advised he could be disciplined for his conduct.

73.  As the Deputy Chief on duty on July 4, 2009, Defendant Livesey was assigned the task of investigating Defendant Bailey's conduct in refusing his orders and going AWOL-away without leave.

74.  Defendant Livesey's initial investigation revealed that the only other individuals who were present to witness the incident in the kitchen were Captain David Hardman, Captain Charles Moore, and Defendant Lander, and Defendant Livesey ordered these individuals to provide written statements as to what had transpired.

75.  The Plaintiff, Captain Moore and Captain Hardman immediately provided the requested statements to Defendant Livesey as ordered, and the Plaintiff's contemporaneous statement described Defendant Bailey's tirade and outburst, and that multiple efforts were made to diffuse the situation; Captain Hardman's statement was essentially consistent with the events as recited by the Plaintiff.

76.  Captain Moore's contemporaneous statement confirmed that both the Plaintiff and Captain Hardman attempted to calm Defendant Bailey down, but that Defendant Bailey had said "screw this", that he was going home, and Captain Moore observed Defendant Bailey leave the building while talking on his cell phone.

77.  Defendant Bailey went AWOL-away without leave-on the morning of July 4, 2009, and did not provide his statement until several days later, after having worked on it with Defendant Union officials, who assisted him with what to say, including numerous disparaging comments about the Plaintiff.

78.  Although Defendant Lander was present and worked on July 4, 2009, he did not prepare his statement on July 4, 2009; Defendant Lander prepared two statements, dated July 7, 2009 and July 10, 2009, which conflicted with the statements provided by the other witnesses and contained disparaging remarks about the Plaintiff.

79.  Prior to the Plaintiff's assignments to periodically to fill in for the South Attleboro Fire Station Captain beginning in April of 2009, the Plaintiff had never worked with Defendant Lander, therefore, Defendant Lander had no personal knowledge or information sufficient to prepare the written allegations about the Plaintiff contained in his statements.

80.  Defendant Attleboro, Defendant Churchill and Defendant Livesey were also aware that prior to July 4, 2009, the Plaintiff had been involved in disciplinary matters regarding Defendants Lander and Bailey due to safety and performance issues.

81.  Neither Defendant Lander nor Defendant Bailey were ever disciplined by Defendant Attleboro for these serious safety and performance issues.

82.  Defendant Lander's statement included numerous assertions about the Plaintiff intended to place the Plaintiff in a false light, including elevating the July 4, 2009 incident into a physical altercation between the Plaintiff and Defendant Bailey, and fabrications that the Plaintiff had made comments to Defendant Bailey in the past regarding his wallet and shining his shoes.

83.  Defendant Lander also revealed the motive underlying the animosity the South Attleboro staff had toward the Plaintiff, in describing a "general feeling that possibly Captain Perkins was trying to get FF Bailey to a point that he would be uncomfortable enough to ask for a transfer back to headquarters in an attempt to get another FF transferred to south station".

84.  The source of this "general feeling" described in Defendant Lander's written statements was directly attributable to Defendant Livesey, and not the Plaintiff, because Defendant Livesey had asked the members of the staff whether any would like to transfer to make way for another individual to be transferred to that station.

85.  Defendant Lander subsequently amended his statement at Defendant Livesey's request, adding additional fabrications that he had observed the Plaintiff take a phone out of Bailey's hand during the July 4, 2009 incident.

86. Defendant Brogan was not physically present to witness the incident between Plaintiff and Defendant Bailey in the kitchen on July 4, 2009.

87.  Despite the fact that Defendant Brogan was not physically present to witness the incident between the Plaintiff and Defendant Bailey on July 4, 2009, Defendant Brogan prepared a statement in which he made it appear as though he had witnessed the incident, and also wrote numerous false accusations and disparaging remarks about the Plaintiff.

88. Defendant Livesey was aware that Defendant Brogan had not witnessed the incident on July 4, 2009.

89.  Defendant Livesey was aware of prior issues between the Plaintiff and Defendant Brogan, including a 2007 incident in which Defendant Brogan believed he had been accused of stealing the Plaintiff's helmet, as well as another incident involving Defendant Brogan's challenge to Plaintiff's rotation of duties, which was dispelled upon review of data confirming Plaintiff was following the proper rotation of duties.

90.  Defendant Guillette was not physically present to witness the incident between Plaintiff and Defendant Bailey in the kitchen on July 4, 2009.

91.  Despite the fact that Defendant Guillette had not witnessed the incident between the Plaintiff and Defendant Bailey, Defendant Guillette wrote a statement disparaging the Plaintiff which contained numerous false allegations against the Plaintiff.

92.  The Plaintiff had not worked with Defendant Guillette since 2005.

93.  Defendant Attleboro, Defendant Livesey and Defendant Churchill were aware of several occasions during the time the Plaintiff had worked with Guillette previously, in which the Plaintiff reported his observations concerning Defendant Guillette's aberrant and inappropriate behavior to other supervisors in the Department.

94.  Although the Plaintiff had reported his observations concerning Defendant Guillette's aberrant and inappropriate behavior, Defendant Attleboro took no action concerning Defendant Guillette, and the Plaintiff was told to shut his mouth because Guillette was protected due to the fact that his brother was a Deputy Chief.

95.  In one incident involving Defendant Guillette in 2005, upon receipt of a fire call with only a three man crew responding, Defendant Guillette informed the crew he was going home sick, therefore the remaining crew responded without him; no discipline resulted from Guillette's abdication of his duties in the midst of an emergency, however, the Plaintiff was berated at the fire scene for entering the building alone.

96.  Defendant Parham was not present on July 4, 2009 at the South Attleboro Fire Station and did not personally observe any interactions between the Plaintiff and Defendant Bailey on July 4, 2009.

97.  Defendant Parham had not worked with the Plaintiff since 2005.

98.  Defendant Parham had never worked with the Plaintiff and Defendant Bailey together, therefore had no personal knowledge as to any interactions between the Plaintiff and Defendant Bailey.

99.  Despite the fact that Defendant Parham had no percipient knowledge about the incident between the Plaintiff and Defendant Bailey on July 4, 2009, Defendant Parham wrote a statement disparaging the Plaintiff which contained numerous false allegations against the Plaintiff, intending to make it appear as though he had actual knowledge of the Plaintiff's interactions with Defendant Bailey.

100.  Defendant Hasslehurst was not present on July 4, 2009 at the South Attleboro Fire Station and did not personally observe any interactions between the Plaintiff and Defendant Bailey on July 4, 2009.

101.  Defendant Hasslehurst had not worked with the Plaintiff since 2007.

102.  Despite the fact that Defendant Hasslehurst had no percipient knowledge about the incident between the Plaintiff and Defendant Bailey on July 4, 2009, Defendant Hasslehurst wrote a statement disparaging the Plaintiff which contained numerous false allegations against the Plaintiff.

103.  Defendant Marcotte was not present on July 4, 2009 at the South Attleboro Fire Station and did not personally observe any interactions between the Plaintiff and Defendant Bailey on July 4, 2009.

104.  Defendant Marcotte was the subject of prior disciplinary issues in which he was issued a written reprimand by the Plaintiff.

105.  Defendant Marcotte had not worked with the Plaintiff since 2007.

106.  Despite the fact that Defendant Marcotte did not observe the incident between the Plaintiff and Defendant Bailey on July 4, 2009, he prepared a written statement addressed to Defendant Churchill disparaging the Plaintiff and made false accusations about the Plaintiff intended to portray the Plaintiff in a negative manner.

107.  Defendant Washington was not present on July 4, 2009 at the South Attleboro Fire Station and did not personally observe any interactions between the Plaintiff and Defendant Bailey on July 4, 2009.

108.  Defendant Washington has never worked with the Plaintiff.

109.  Defendant Washington has never worked with the Plaintiff and Defendant Bailey together, and therefore has no personal knowledge as to any interactions between the Plaintiff and Defendant Bailey.

110.  Despite the fact that Defendant Washington did not observe the incident between the Plaintiff and Defendant Bailey on July 4, 2009, he prepared a written statement addressed to Defendant Churchill and Defendant Attleboro's Mayor, in which he disparaged the Plaintiff and made false accusations about the Plaintiff,

intending to make it appear as though he had actual knowledge of the Plaintiff's interactions, and intending to

portray the Plaintiff in a negative manner.

111.  Defendant Guertin was not present on July 4, 2009 at the South Attleboro Fire Station and did not

personally observe any interactions between the Plaintiff and Defendant Bailey on July 4, 2009.

112.  The Plaintiff had not worked with Defendant Guertin since 2005.

113.  Despite the fact that Defendant Guertin did not observe the incident between the Plaintiff and Defendant

Bailey on July 4, 2009, Defendant Guertin prepared a written statement disparaging the Plaintiff, fabricated

details about incidents occurring in 2002 and earlier, and requested that the Plaintiff be demoted or transferred.

114.  Defendant Guertin assisted Defendant Bailey as a Union official regarding Defendant Bailey's conduct on

July 4, 2009.

115.  Defendant Guertin also had previous disciplinary issues, however, Defendant Guertin was never

disciplined by Defendant Attleboro.

116.  Defendant Livesey and Defendant Churchill were aware that Defendant Guertin was acting as a Union

representative for Defendant Bailey when they obtained his written statements against the Plaintiff.

117.  Defendants Livesey and Defendant Churchill were aware that the Defendant letter writers harbored

animosity toward the Plaintiff due to prior issues between the Plaintiff and Defendant letter writers, and they

intentionally sought statements from the Defendant letter writers to substantiate their improper investigation

because they knew said Defendants were predisposed to disparaging the Plaintiff.

118.  Defendant Wilson has never worked with the Plaintiff.

119.  Defendant Wilson has never worked with the Plaintiff and Defendant Bailey together, and has no personal

knowledge regarding interactions between the Plaintiff and Defendant Bailey.

120.   Defendant Wilson was not present on July 4, 2009 at the South Attleboro Fire Station and did not

personally observe any interactions between the Plaintiff and Defendant Bailey on July 4, 2009.

121.  Despite the fact that Defendant Wilson did not observe the incident between the Plaintiff and Defendant

Bailey on July 4, 2009, Defendant Wilson prepared a written statement disparaging the Plaintiff with the intent

to make it appear as though he had personal knowledge about the interactions between the Plaintiff and

Defendant Bailey.

122.  Upon information and belief, while serving as an Attleboro Firefighter, Defendant Wilson had a criminal history, however, Defendant Wilson was never the subject of disciplinary proceedings by Defendant Attleboro.

123.  Upon information and belief, Defendant Churchill was aware of Defendant Wilson's criminal record, however, Defendant Churchill shielded Defendant Wilson from any adverse employment action.

124.  In 2010 Defendant Churchill retired and a new Chief was appointed to the Attleboro Fire Department.

125.  In 2012, Defendant Wilson, not having the same level of protection afforded to him by Defendant Churchill, was subsequently terminated from his position with Defendant Attleboro due to indictment for possession and intent to distribute narcotics, which charges are presently pending against him.

126.  Defendant Wilson orchestrated the letters written by the Defendants, collected the letters in connection with the improper investigation which resulted in disciplinary action against the Plaintiff, and shared the letters with other members of the Department.

127.  The Plaintiff has never worked with Defendant Washington.

128.  Defendant Washington was not present on July 4, 2009 at the South Attleboro Fire Station and did not personally observe any interactions between the Plaintiff and Defendant Bailey on July 4, 2009.

129.  Despite the fact that Defendant Washington had no percipient knowledge as to what had transpired between Defendant Baily and the Plaintiff on July 4, 2009, Defendant Washington prepared a written statement disparaging the Plaintiff which he submitted to Defendant Attleboro.

130.  On July 11, 2009, in a meeting with Defendant Livesey, the Plaintiff was informed that his career was in a "downward spiral"; as of this meeting, Defendant Livesey made no indication to the Plaintiff that any racial tensions or offensive comments were at issue, but Defendant Livesey advised the Plaintiff that the Plaintiff was being called a recluse and anti-social, and that the Plaintiff could not expect to be promoted; Defendant Livesey also accused the Plaintiff of conspiring with another firefighter to get that firefighter transferred to the South Attleboro station, by instigating a problem with Defendant Bailey.

131.  On or about July 20, 2009, Defendant Livesey generated a computer printout discussing "hostile work environment" which described physically threatening behavior occurring on the basis of race.

132.  Although the July 4, 2009 incident between Defendant Bailey and the Plaintiff was not a racial conflict, subsequent to meetings with Defendant Union officials and Defendant Attleboro officials, and subsequent to Livesey's July 20, 2009 printout, the matter was escalated by the Defendants into a purported racial conflict between the Plaintiff and Defendant Bailey.

133.  Defendant Livesey and Defendant Churchill transformed the investigation of Defendant Bailey's July 4, 2009 misconduct into an improper investigation of the Plaintiff for purposes of seeking disparaging letters about the Plaintiff from the Defendants, coordinating their efforts with the Defendant Union.

134.  Defendant Attleboro allowed the improper investigation of the Plaintiff, and permitted Defendant Livesey and Defendant Churchill to engage in seeking written defamatory comments about the Plaintiff from members of the Department who were not percipient witnesses to the events of July 4, 2009.

135.  Several of the statements sought by Defendant Union, Defendant Churchill and Defendant Livesey expounded upon hostile work environment claims, although none of the letter writers had previously raised allegations at any time prior to Defendant Bailey's July 4th tirade or Defendant Livesey's 7-20-09 printout.

136.  Defendant Dubuc gathered copies of letters and shared the letters so that they could be read by other members of the Department.

137.  The written statements prepared by the Defendants were based upon hearsay, allegations of incidents that had purportedly occurred in the past, factually inaccurate recitations of disciplinary issues and allegations about matters for which the Defendants had no personal knowledge, and the Defendants conspired together to prepare the written disparaging remarks about the Plaintiff to ensure the Plaintiff was not promotionally advanced in the Department.

138.  The Plaintiff repeatedly denied the allegations made in writing by the Defendants, and made repeated requests to be heard concerning the false accusations; the Plaintiff also made numerous entreaties to Defendant Attleboro to stop the improper investigation and made numerous efforts to refute the false accusations including requesting Defendant Attleboro to investigate and/or research the accusations which would have resulted in the determination the statements were false; however, Defendant Attleboro refused and denied the Plaintiff's entreaties and requests.

139.   The defamatory statements written by the Defendants were prepared several days and weeks after the July 4, 2009 incident.

140.   Defendant Livesey and Defendant Churchill did not investigate whether the Defendant letter writers had actually worked with the Plaintiff.

141.   Defendant Livesey and Defendant Churchill knew or should have known that some of the Defendant letter writers had never worked with the Plaintiff.

142.   Defendant Livesey and Defendant Churchill knew or should have known that some of the Defendant letter writers had not worked with the Plaintiff in several years.

143.   Computerized records of attendance, assignments, overtime and emergency response calls existed at the Department, under the control of Defendant Churchill and Defendant Livesey, therefore verification of these basic facts through the computerized records could have occurred.

144.   Neither Defendant Livesey nor Defendant Churchill reviewed computerized records as part of the basic investigation into the allegations made against the Plaintiff.

145.   Defendant Livesey and Defendant Churchill intended the improper investigation to result in the Plaintiff's discipline and to prevent the Plaintiff from any future promotional advancement in the Department.

146.   The Defendants acted in bad faith, recklessly and with malice because they knew or should have known that the statements of the Defendant letter writers were false and intended to result in discipline of the Plaintiff and prevent the Plaintiff from any future promotional advancement in the Department.

147.   Between July 7, 2009 and July 24, 2009, the Defendants acted in concert to prepare the written defamatory statements about the Plaintiff.

148.   On or around July 24, 2009, Defendant Churchill forwarded correspondence to the Plaintiff in which he stated his office had received several letters of concern about the Plaintiff and that the matter was also anonymously brought to the Mayor's attention, although Defendant Churchill failed to provide copies of the "letters of concern" to the Plaintiff.

149.   On or around July 27, 2009, Defendant Bailey asserted charges against Defendant Attleboro in a statement under oath to the Massachusetts Commission Against Discrimination, hereafter "MCAD".

150.  Defendant Bailey's statement to the MCAD contained numerous false statements, including numerous false statements about the Plaintiff, to bolster his claims of discrimination and make it appear as though the Claimant was a racist.

151.  On or around July 28, 2009, Defendant Livesey prepared a report for Defendant Churchill, which included a July 10, 2009 statement of Defendant Bailey, a July 4, 2009 statement of the Plaintiff, a July 6, 2009 statement of Captain Hardman, a July 4, 2009 statement of Captain Moore, a July 7, 2009 statement of Defendant Lander, a July 10 "amendment" of Defendant Lander, an undated letter from Defendant Brogan, and a July 24, 2009 letter of Defendant Guertin.

152.  Although Defendant Churchill indicated to the Plaintiff that he was conducting a fact finding meeting with the Plaintiff on August 3, 2009, Defendant Churchill conducted an ambush investigation of the Plaintiff.

153.  In a letter dated August 5, 2009, Defendant Churchill ordered the Plaintiff's suspension for two tours of duty, or the equivalent of one week.

154.  Defendant Attleboro's discipline of the Plaintiff occurred as a result of Defendant Bailey's MCAD charges.

155.  Prior to August 5, 2009, the Plaintiff had no record of disciplinary or performance issues, and in fact, had a record of commendations in his personnel file for his professionalism.

156.  In its September 14, 2009 Position Statement filed with the MCAD under the pains and penalties of perjury, Defendant Attleboro admitted that prior to July 4, 2009, Defendant Bailey had never made any racial complaints.

157.  Defendant Attleboro provided protected personnel information and made several disparaging remarks about the Plaintiff in its Position Statement to the MCAD, neither seeking the Plaintiff's input or permission prior to discussing him or his personnel information it its position statement to the MCAD.

158.  Had Defendant Attleboro made any minimal effort to actually investigate the MCAD charges filed by Defendant Bailey, the Defendant would have been able to refute the factual misrepresentations contained therein.

159.  Defendant Attleboro also admitted under oath in its Position Statement that the only individuals it had actually interviewed regarding the July 4, 2009 incident were Walter Guertin, Michael Wilson, Ed Guillette, Gerry Brogan and Craig Lander.

160.   Despite identifying these individuals as witnesses, Defendant Attleboro knew that Defendant Guertin, Defendant Wilson, Defendant Guillette and Defendant Brogan were not present during the July 4, 2009 incident, and was also aware and in possession at the time of filing its Position Statement of the statements of percipient witnesses to the July 4, 2009 incident.

161.   Defendant Attleboro participated in the conspiracy and wrongful conduct of the individual Defendants by failing to properly investigate and failing to provide any factual defense to the MCAD charges, and by utilizing the MCAD process to further disparage the Plaintiff.

162.   During the improper investigatory process, Defendant Attleboro was aware that the Plaintiff was represented by counsel and had requested the presence of counsel during any meetings concerning the incident of July 4, 2009, however Defendant Attleboro, Defendant Churchill and Defendant Livesey refused to allow the Plaintiff to have counsel present during ambush interviews and investigatory meetings.

163.   Defendant Attleboro also refused the Plaintiff's repeated written and oral requests to meet and schedule a hearing to review the disciplinary actions taken against him.

164.   The Plaintiff filed a formal appeal of the disciplinary action taken against him with the Commonwealth of Massachusetts Civil Service Commission.

165.   During the Plaintiff's civil service hearing, Defendant Churchill testified that he did not objectively credit any allegations of racial discrimination, and stated that he wanted to prevent a mutiny, and that he had to do something because of the filings in Boston.

166.   There have never been any complaints made by any member of the Department that the Plaintiff was engaging in racially offensive conduct.

167.   Defendant Bailey was never disciplined for his inappropriate and insubordinate conduct on July 4, 2009.

168.   Upon information and belief, Defendant Attleboro paid Defendant Bailey a monetary settlement as a result of his claims at the MCAD.

169.   Despite the fact that the Plaintiff was not named as a party in Defendant Bailey's MCAD complaint, Defendant Attleboro, by and through its Personnel director, continued to disparage the Plaintiff publicly, including comments provided to the Attleboro Sun Chronicle in an article published on March 23, 2011,

wherein, it once again, discussed without authorization the personnel action taken against the Plaintiff, commented that the Plaintiff harassed everyone, not just Bailey, and made other misrepresentations about the Plaintiff concerning Bailey's MCAD action, falsely made it appear for public consumption that the Plaintiff was found responsible for discrimination, and falsely made it appear for public consumption that the Plaintiff was involved in and bound by a confidential settlement.

170.  As a direct consequence of the Defendant Attleboro's defamatory conduct, the Plaintiff was denied employment opportunities.

171. Defendant Attleboro engaged in a wrongful, capricious, improper and unfair disciplinary process, involving amassing adverse information about the Plaintiff in the form of written defamatory remarks, placing him in the predicament of having to defend himself against stale, untimely, and baseless accusations, conjecture, and speculation, and taking adverse employment action against the Plaintiff on the basis of rumors and speculation.

172.  Defendant Attleboro disciplined the Plaintiff on the basis of the false accusations, conjecture and speculation written by the Defendants in violation of the Plaintiff's employment rights.

173.  Two separate sets of disciplinary charges issued by Defendant Churchill against the Plaintiff, the first set, dated July 22, 2009, and the second set, dated August 5, 2009, were entirely based on the accusations in the defamatory letters written by the Defendants.

174.  Defendant Churchill was predisposed to taking adverse action against the Plaintiff, and used the Defendant letter writers as his basis for doing so, without regard for the truthfulness of their accusations.

175.  The Defendants also intended in preparing these letters to place the Plaintiff in a false light so that Defendant Bailey would not be disciplined.

176.  Although Defendant Churchill and Defendant Livesey used the Defendant letter writers towards Defendant Churchill's improper motives, the Defendant letter writers willingly and voluntarily participated in creating fabrications intended to adversely affect the Plaintiff and the Plaintiff's promotional advancement within the Department, acting with malice and with utter disregard for the truth of their accusations; to date, none of the letter writers who fabricated allegations against the Plaintiff have come forward to recant their written misrepresentations of fact.

## COUNT I-42 U.S.C.S. §§1983, 1988-VIOLATION OF FIRST AMENDMENT RIGHTS

177.  The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs.

178.  At all times relevant hereto, the Plaintiff was the employee of the Defendant Attleboro.

179.  Defendant Attleboro was the employer of the Plaintiff when the Plaintiff was deprived of his rights under the First Amendment to the United States Constitution in violation of 42 U.S.C.S. §1983.

180.  Defendant Churchill was the Chief of the City of Attleboro Fire Department acting under color of law when he deprived the Plaintiff of his rights under the First Amendment to the United States Constitution in violation of 42 U.S.C.S. §1983.

181.  Defendant Livesey was the Deputy Chief of the Attleboro Fire Department acting under color of law when he deprived the Plaintiff of his rights under the First Amendment to the United States Constitution in violation of 42 U.S.C.S. §1983.

182.  The Plaintiff's actions involved a matter of political, public, social and/or other concern and are constitutionally protected under the First Amendment of the United States Constitution.  Furthermore, the Plaintiff's interest in his actions outweighs any interest the Defendant Attleboro and its agents, servants and employees had in promoting the efficient operation and administration of government services.

183.  The Plaintiff's speech was a substantial and motivating factor in the Defendants' decision to adversely affect the Plaintiff's employment with the Defendant Attleboro.  The Defendants acted intentionally to chill the Plaintiff's speech, discredit the Plaintiff by damaging his reputation, and punish the Plaintiff for exercising his free speech rights.

184.  The Defendants participated in the deprivation of the Plaintiff's rights by preparing written statements disparaging the Plaintiff and fabricating allegations about the Plaintiff in an effort to adversely affect the Plaintiff's employment and promotional advancement.

185.  The Defendants intentionally, willfully, recklessly and maliciously misaligned the Plaintiff and retaliated against the Plaintiff because of his actual and/or perceived lack of support Defendant Churchill, and Defendants acted under color of authority in gross disregard for the Plaintiff's rights.

186.  As a consequence of Defendants' actions, the Plaintiff has suffered, and continues to suffer damages,

including, but not limited to loss of income and benefits, loss of personal and professional reputation, other

financial losses and emotional and mental distress, and the Plaintiff's damages continue to date.

## COUNT II-42 U.S.C.S. §§1983, 1988-VIOLATION OF FOURTEENTH AMENDMENT RIGHTS

187. The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs.

188. The Plaintiff's due process rights were adversely affected by the improper disciplinary investigation and

ambush hearings involving the Plaintiff.

189. The Defendants' conduct in shifting the investigation of Defendant Bailey into an investigation of the

Plaintiff, without due notice to the Plaintiff, based upon rumors, speculation, unsubstantiated allegations, and

easily refuted fabrications of events violated the Plaintiff's due process and denied the Plaintiff fair process.

190. The Defendants knowingly, intentionally and deliberately failed to inform the Plaintiff that he was the

subject of investigation.

191. The Defendants violated the Plaintiff's due process by refusing to permit the Plaintiff to have legal counsel

present during ambush disciplinary hearings and interviews.

192. Defendant Union violated the Plaintiff's due process rights by engaging in the improper investigation and

gathering written statements libeling the Plaintiff.

193. The Defendants violated the Plaintiff's due process and fair procedure rights by involving in the

investigatory process Defendants who had no knowledge of the incident at hand, and who were known to the

Defendants to be predisposed to making false and disparaging statements about the Plaintiff.

194. The Defendants adversely affected the Plaintiff's Fourteenth Amendment right to privacy by publicly

disclosing, exchanging, sharing and discussing the Plaintiff's confidential personnel information.

195. Defendant Attleboro violated the Plaintiff's due process rights by permitting Defendant Churchill and

Defendant Livesey to conduct the improper investigation of the Plaintiff.

196. Defendant Attleboro violated the Plaintiff's due process rights by permitting the Defendant Union to be

involved in and participate in the improper disciplinary investigation of the Plaintiff.

197. Defendants, acting under color of law, caused the Plaintiff to be defamed publicly and caused the Plaintiff's

personal and professional reputation to be irreparably harmed by its improper investigation and discipline of the

Plaintiff based upon fabrications, rumors, speculation and hearsay.

198.  As a direct result of the conduct and actions of the Defendants, the Plaintiff has suffered actual loss of employment opportunities, and permanent and indelible harm to his reputation in the community.

199.  Due to the actions and conduct of the Defendants, the Plaintiff's due process rights were violated, and the Plaintiff suffered, and continues to suffer damages, including, but not limited to loss of income and benefits, loss of personal and professional reputation, other financial losses and emotional and mental distress, and the Plaintiff's damages continue to date.

## COUNT III-42 U.S.C.S. §§1983, 1988-VIOLATION OF CIVIL RIGHTS

200.  The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs.

201.  Defendant Attleboro failed to properly supervise Defendant Churchill and Defendant Livesey in the course of the disciplinary investigation, and allowed Defendants Churchill and Defendant Livesey to engage in an improper investigation of the Plaintiff.

202.  Defendant Churchill and Defendant Livesey initiated the improper investigation of the Plaintiff in bad faith, with improper motives, and actual malice.

203.  Defendant Attleboro, by and through its Personnel Director, Defendant Churchill and Defendant Livesey, orchestrated, authorized, approved and encouraged the inappropriate and improper investigation of the Plaintiff.

204.  Defendant Attleboro, by and through its Personnel Director, Defendant Churchill, and Defendant Livesey, acting in concert with the Defendant Union, and Defendant letter writers, orchestrated, authorized, approved and encouraged the conspiracy to protect Defendant Bailey and the conspiracy to adversely affect the Plaintiff's employment through the inappropriate and improper investigation of the Plaintiff.

205.  Defendant Attleboro should have stopped the inappropriate and improper investigation of the Plaintiff and failed to supervise or stop the conduct of its wayward officials despite its knowledge that the investigation was ongoing.

206.  Defendant Attleboro should have stopped or intervened in the investigatory process and ensured that the process was not based upon hearsay, rumors, or unsubstantiated allegations against the Plaintiff, however, Defendant Attleboro encouraged the unlawful and inappropriate disciplinary process.

207.  Defendant Attleboro should have undertaken necessary and appropriate steps to ensure that any investigation undertaken by Defendant Churchill and Defendant Livesey proceed properly.

208.  Defendant Attleboro should have undertaken necessary and appropriate steps to ensure that Defendant Union remained outside of the investigatory process of any alleged wrongdoing of its employees save for those responsibilities permitted to it by law.

209.  Defendant Union not only failed to ensure representation for the Plaintiff, but also participated in the improper investigatory process by coordinating defamatory statements about the Plaintiff, in bad faith, with improper motives, and actual malice.

210.  Defendant Attleboro knew or should have known that the conduct engaged in by the Defendants was wrong.

211.  Defendant Attleboro knew or should have known that disciplinary action based upon false statements, conjecture, speculation, and rumors constituted a violation of the Plaintiff's civil rights.

212.  Defendant Attleboro could have readily ascertained the falsehood of the statements written by the Defendants in the course of the improper investigation of the Plaintiff.

213.  By and through its acquiescence and approval of the improper disciplinary process, Defendant Attleboro and its agents, servants and employees, acting under color of state law, caused the Plaintiff's personal and professional reputation to be defamed and irreparably harmed.

214.  Defendant Attleboro, by and through its agents, servants and employees, publicly disclosed the Plaintiff's discipline without the consent or approval of the Plaintiff.

215.  Due to the actions and conduct of the Defendants, the Plaintiff's constitutional and statutory rights were violated, and the Plaintiff suffered, and continues to suffer damages, including, but not limited to loss of income and benefits, loss of personal and professional reputation, loss of job opportunities, financial losses, and emotional and mental distress, and the Plaintiff's damages continue to date.

## COUNT IV-42 U.S.C.S. §§1983, 1885, 1988-VIOLATION OF CIVIL RIGHTS-CONSPIRACY

216.  The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs.

217.  The Defendants acted in concert to intentionally harm the Plaintiff and adversely affect the Plaintiff's employment and promotional advancement opportunities, and acted to intentionally deprive the Plaintiff of his constitutionally protected rights, including his right to employment, by engaging in a scheme to fabricate accusations, allegations, and information about the Plaintiff to depict the Plaintiff in a negative light, in an effort to prevent the Plaintiff from promotion and in an attempt to have the Plaintiff demoted and/or terminated.

218.  The Defendants acted in concert to prepare written statements about the Plaintiff depicting the Plaintiff in a false light and providing false information about the Plaintiff in an effort to adversely harm the Plaintiff in his employment and interefere with the Plaintiff's employment rights.

219.  Defendant Attleboro, Defendant Churchill, and Defendant Livesey failed to engage in fair and proper investigatory procedures, and had no good faith belief or truthful information permitting them to engage in investigation or discipline of the Plaintiff, in furtherance of the conspiracy of the Defendants.

220.  Due to the conduct engaged in by the Defendants in concert with one another, the Plaintiff's civil rights were violated, and the Plaintiff suffered, and continues to suffer damages, including, but not limited to loss of income and benefits, loss of personal and professional reputation, loss of job opportunities, financial losses, and emotional and mental distress, and the Plaintiff's damages continue to date.

## COUNT V-CONSPIRACY

221.  The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs.

222.  The Defendants acted in concert to intentionally harm the Plaintiff and adversely affect the Plaintiff's employment and promotional advancement opportunities, and acted to intentionally deprive the Plaintiff of his constitutionally protected rights, including his right to employment, by engaging in a scheme to fabricate accusations, allegations, and information about the Plaintiff to depict the Plaintiff in a negative light, in an effort to prevent the Plaintiff from promotion and in an attempt to have the Plaintiff demoted and/or terminated.

223.  The Defendants acted in concert to prepare written statements about the Plaintiff depicting the Plaintiff in a false light and providing false information about the Plaintiff in an effort to adversely harm the Plaintiff in his employment and interefere with the Plaintiff's employment rights.

224.  Defendant Attleboro, Defendant Churchill, and Defendant Livesey failed to engage in fair and proper investigatory procedures, and had no good faith belief or truthful information permitting them to engage in investigation or discipline of the Plaintiff, in furtherance of the conspiracy of the Defendants.

225.  Due to the conduct engaged in by the Defendants in concert with one another, the Plaintiff's common law rights were violated, and the Plaintiff suffered, and continues to suffer damages, including, but not limited to loss of income and benefits, loss of personal and professional reputation, loss of job opportunities, financial losses, and emotional and mental distress, and the Plaintiff's damages continue to date.

## COUNT VI-VIOLATION OF MASSACHUSETTS CIVIL RIGHTS-MASS. GEN. L. CH. 12 §11I

226.  The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs.

227.  The Defendants acted in concert to intentionally harm the Plaintiff and adversely affect the Plaintiff's employment and promotional advancement opportunities, and acted to intentionally deprive the Plaintiff of his constitutionally protected rights, including his right to employment, by engaging in a scheme to fabricate accusations, allegations, and information about the Plaintiff to depict the Plaintiff in a negative light, in an effort to prevent the Plaintiff from promotion and in an attempt to have the Plaintiff demoted and/or terminated.

228.  The Defendants acted in concert to prepare written statements about the Plaintiff depicting the Plaintiff in a false light and providing false information about the Plaintiff in an effort to adversely harm the Plaintiff in his employment and interefere with the Plaintiff's employment rights.

229.  Defendant Attleboro, Defendant Churchill, and Defendant Livesey failed to engage in fair and proper investigatory procedures, and had no good faith belief or truthful information permitting them to engage in investigation or discipline of the Plaintiff, in furtherance of the conspiracy of the Defendants.

230.  Due to the conduct engaged in by the Defendants in concert with one another, the Plaintiff's civil rights pursuant to Mass. Gen. L. Ch. 12 §11I were violated, and the Plaintiff suffered, and continues to suffer damages, including, but not limited to loss of income and benefits, loss of personal and professional reputation, loss of job opportunities, financial losses, and emotional and mental distress, and the Plaintiff's damages continue to date.

## COUNT VII-VIOLATION OF PRIVACY-
## MASS. GEN. L. CH. 214 §§1B, 3B -MASS. GEN. L. CH. 4 §7 (26)(c ) AND MASS. GEN. L. CH. 66A.

231.  The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs.

232.  Defendant Attleboro publicly disclosed privileged and confidential personnel information regarding the Plaintiff within the Attleboro Fire Department and among the members of the Attleboro Fire Department, in violation of the Plaintiff's right to privacy.

233.  Defendant Attleboro publicly disclosed privileged and confidential personnel information regarding the Plaintiff to the Defendant Union and among the members of the Defendant Union, in violation of the Plaintiff's right to privacy.

234.  Defendant Union publicly disclosed privileged and confidential personnel information regarding the Plaintiff to its members in violation of the Plaintiff's right to privacy.

235.  In the context of the improper investigation of the Plaintiff, Defendant Attleboro, by and through its agents, servants and employees, circulated the Plaintiff's confidential and privileged personnel information in an effort to further pursue its improper investigation of the Plaintiff, in violation of the Plaintiff's privacy.

236.  Defendant Churchill and Defendant Livesey publicly discussed disciplinary measures and disciplinary investigation of the Plaintiff with numerous individuals at the Attleboro Fire Department in violation of the Plaintiff's privacy, in an effort to further pursue improper investigation of the Plaintiff.

237.  Defendant Union by and through its agents, servants and employees, participated in and publicly discussed with its members and coordinated statements from its members which were shared publicly in the course of the improper investigation of the Plaintiff, in an effort to substantiate the improper investigation of the Plaintiff, and in an effort to prevent Defendant Bailey from being disciplined.

238.  Defendant Attleboro improperly discussed the Plaintiff's confidential and privileged personnel information in the proceedings against it filed by Defendant Bailey at the MCAD.

239.  Defendant Attleboro by and through its agents, servants and employees improperly discussed the Plaintiff in news articles regarding claims asserted against Defendant Attleboro, in violation of the Plaintiff's right to privacy and in furtherance of substantiating its own wrongful investigation of the Plaintiff.

240.  Defendants' conduct and comments were false and intended to and did so place the Plaintiff in a false light and irreparably harm the Plaintiff's personal and professional reputation in the community.

241.   Defendants' conduct and comments have permanently harmed the Plaintiff by damaging his reputation and have interfered with and prevented the Plaintiff from obtaining employment opportunities.

242.   Defendant Attleboro, by and through its agents, servants and employees, violated the Plaintiff's right to privacy by its public disclosure of information pertaining to its improper investigation of the Plaintiff, and publicly disclosing the statements fabricated by the Defendants about the Plaintiff in order to place the Plaintiff in a false light publicly.

243.   Due to the actions and conduct of the Defendants, the Plaintiff's right to privacy was violated, and the Plaintiff suffered, and continues to suffer damages, including, but not limited to loss of income and benefits, loss of personal and professional reputation, loss of job opportunities, financial losses, and emotional and mental distress, and the Plaintiff's damages continue to date.

## COUNT VIII-DEFAMATION

244.   The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs.

245.   Defendants prepared false statements intended to adversely affect the Plaintiff in his employment, and which statements did affect the Plaintiff's employment terms, conditions and benefits.

246.   Defendants published false statements about the Plaintiff intended to present the Plaintiff in a false light, which did expose the Plaintiff to hatred and contempt, and which did cause the Plaintiff to suffer harm to and loss of his personal and professional reputation.

247.   Defendant Attleboro published defamatory allegations made about the Plaintiff with reckless disregard for whether the defamatory allegations against the Plaintiff were true.

248.   The Defendants published defamatory remarks about the Plaintiff with actual malice, knowing that the remarks and allegations were untrue.

249.   Defendant Attleboro's failure to ascertain the truth and veracity of the allegations written about the Plaintiff, and publicizing the statements without regard for the truth of said allegations was reckless, malicious, unfair and harmful to the Plaintiff.

250.   To date, none of the Defendants have publicly retracted their defamatory allegations about the Plaintiff.

251. Defendants written statements were false and intended to and did so place the Plaintiff in a false light and irreparably harm the Plaintiff's personal and professional reputation in the community.

252. Defendants have permanently harmed the Plaintiff by damaging his reputation and have interfered with and prevented the Plaintiff from obtaining employment opportunities.

253. Defendants intentionally and with malice made false statements, written and oral, concerning the Plaintiff.

254. The false statements made by the Defendants concerning the Plaintiff were published to third parties and discredited the Plaintiff in the minds of any considerable and respectable segment in the community.

255. Defendant Attleboro received statutory notice of claim in accordance with Mass. Gen. L. Ch. 258 §4.

256. Due to the actions and conduct of the Defendants, the Plaintiff's right to privacy was violated, and the Plaintiff suffered, and continues to suffer damages, including, but not limited to loss of income and benefits, loss of personal and professional reputation, loss of job opportunities, financial losses, and emotional and mental distress, and the Plaintiff's damages continue to date.

## COUNT IX-INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

257. The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs.

258. The Plaintiff had a contractual relationship with Defendant Attleboro in the context of his employment with Defendant Attleboro.

259. Defendants knowingly and intentionally engaged in conduct which interfered with the Plaintiff's contractual relationship with Defendant Attleboro, and knowingly and intentionally engaged in conduct intended to and which did adversely affect the Plaintiff's contractual relationship with his employer.

260. Defendants engaged in conduct in violation of the Plaintiff's civil rights, constitutional rights, and statutory rights; Defendants' conduct was motivated by the desire to retaliate against the Plaintiff, and to shield Defendant Bailey from being disciplined for his conduct.

261. Defendant Churchill and Defendant Livesey acted with actual malice and intent to harm the Plaintiff by engaging in an improper investigation of the Plaintiff, and acted under authority permitted them by Defendant Attleboro.

262. Defendant Attleboro received statutory notice of claim in accordance with Mass. Gen. L. Ch. 258 §4.

263.  Due to the actions and conduct of the Defendants, the Plaintiff's employment was adversely affected, and the Plaintiff suffered harm and damages, including, but not limited to loss of income and benefits, loss of personal and professional reputation, loss of job opportunities, financial losses, and emotional and mental distress, and the Plaintiff's damages continue to date.

### COUNT X-NEGLIGENCE

264.  The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs

265.  Defendant Attleboro owed a duty of care to protect the Plaintiff's confidential employment information.

266.  Defendant Attleboro owed a duty of care to protect the Plaintiff's employment rights and to ensure the Plaintiff received fair and equal treatment in the course of his employment.

267.  Defendant Attleboro owed a duty of care to ensure proper training of its employees and supervisors.

268.  Defendant Attleboro failed to properly maintain confidential information and data concerning the Plaintiff and Plaintiff's employment.

269.  Defendant Attleboro breached its duty to ensure fair and equal treatment of the Plaintiff in the context of his employment.

270.  Defendant Attleboro knew or should have known that involving the Defendant letter writers in a disciplinary investigation would have resulted in harm to the Plaintiff, and should have taken steps to prevent improper disciplinary investigation.

271.  Defendant Attleboro received statutory notice of claim in accordance with Mass. Gen. L. Ch. 258 §4.

272.  As a direct and proximate result of Defendant Attleboro's failure and breach of its duties, the Plaintiff sustained damages, including loss of income, loss of employment benefits, loss of personal and professional reputation, loss of employment opportunities, financial losses, emotional and mental distress, and the Plaintiff's damages continue to date.

### COUNT XI-NEGLIGENT SUPERVISION AND TRAINING

273.  The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs

274.  Defendant Attleboro owed a duty of care to protect the Plaintiff's employment rights and to ensure the Plaintiff received fair and equal treatment at the hands of Plaintiff's supervisors.

275.  Defendant Attleboro owed a duty of care to its employees to ensure proper training of its employees and supervisors.

276.  Defendant Attleboro owed a duty of care to properly manage and supervise its employees and supervisors.

277.  Defendant Attleboro failed to properly train, manage and supervise its employees.

278.  Defendant Attleboro permitted supervisors and employees to publicize confidential information and data concerning the Plaintiff and Plaintiff's employment.

279.  Defendant Attleboro breached its duty to ensure fair and equal treatment by permitting Defendant Churchill and Defendant Livesey to engage in improper investigation and improper investigatory tactics which harmed the Plaintiff.

280.  Defendant Attleboro knew or should have known of the substantial misconduct engaged in by the Plaintiff's supervisors, and should have taken steps to prevent said misconduct.

281.  Defendant Attleboro knew or should have known of the improper investigatory tactics being employed by Defendant Churchill and Defendant Livesey, and should have taken steps to correct the improper investigatory tactics being employed by said Defendants.

282.  Defendant Attleboro received statutory notice of claim in accordance with Mass. Gen. L. Ch. 258 §4.

283.  As a direct and proximate result of Defendant Attleboro's failure and breach of its duties, the Plaintiff sustained damages, including loss of income, loss of employment benefits, loss of personal and professional reputation, loss of employment opportunities, financial losses, emotional and mental distress, and the Plaintiff's damages continue to date.

## COUNT XII-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

284.  The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs.

285.  The conduct and action of the Defendants as described herein was outrageous.

286.  The Defendants knew or should have known that their outrageous conduct would cause the Plaintiff emotional harm and distress.

287.  The Defendants intended to cause the Plaintiff emotional harm and distress.

288.  Defendant Attleboro received statutory notice of claim in accordance with Mass. Gen. L. Ch. 258 §4.

289.  As a direct result of the extreme and outrageous behavior of the Defendants, the Plaintiff was caused to suffer emotional harm and distress.

## COUNT XIII-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

290.  The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs.

291.  The conduct and actions of the Defendants as described herein was negligent.

292.  The Defendants knew or should have known that their negligent conduct would cause the Plaintiff emotional harm and distress.

293.  The Defendants should have known and could have foreseen that their conduct would cause the Plaintiff emotional harm and distress.

294.  Defendant Attleboro received statutory notice of claim in accordance with Mass. Gen. L. Ch. 258 §4.

295.  As a direct result of the negligent actions of the Defendants, the Plaintiff was caused to suffer emotional harm and distress.

## COUNT XIV-RETALIATION

296.  The Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs.

297.  In direct retaliation for the Plaintiff's exercise of free speech concerning Defendant Churchill's extension of service, the Defendants engaged in a course of conduct without lawful or proper motive to do so which was intended to adversely affect the Plaintiff's employment and promotional advancement.

298.  In direct retaliation for prior disciplinary matters in which the Plaintiff as a supervisory official over Defendant letter writers was required to engage in discipline, the Defendant letter writers acted in concert to utilize the improper investigatory process to adversely affect the Plaintiff's employment and promotional advancement.

299.  In direct retaliation for the Plaintiff's execution of his official duties, the Defendants conspired to defame and impugn the Plaintiff, orally and in writing, to adversely affect the Plaintiff's employment and promotional advancement.

300.   The retaliatory conduct engaged in by the Defendants toward the Plaintiff is ongoing and continues to date; the Defendants continue to publicly berate the Plaintiff during the performance of his duties, and continue to write disparaging remarks about the Plaintiff in the form of anonymous letters to the Plaintiff's supervisors, however, no action is taken to stop the retaliatory conduct on the part of the Defendants, and Defendant Attleboro acquiesces and permits said wrongful and improper conduct to continue.

301.   As a result of the conduct and actions of the Defendants in violation of the common law of retaliation, the Plaintiff was harmed and sustained damages, including loss of income, loss of employment benefits, loss of personal and professional reputation, loss of employment opportunities, financial losses, emotional and mental distress, and the Plaintiff's damages continue to date.

## PUNITIVE DAMAGES

302.   The conduct of the Defendants demonstrated conscious indifference toward the rights of the Plaintiff.  The intentional, malicious and willful nature of such conduct by the Defendants, and the conscious disregard of the Plaintiff's rights and welfare supports the imposition of punitive damages.

## ATTORNEYS FEES AND COSTS

303.   It was necessary for the Plaintiff to hire counsel to initiate the within claims; upon judgment, the Plaintiff is entitled to an award of attorneys fees and costs under 42 U.S.C.S. §1988.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays this Court:

1.   Award him compensatory damages;

2.   Award him lost wages and benefits;

3.   Award him appropriate front pay and benefits;

4.   Award him punitive damages;

5.   Award him attorneys fees and costs as provided under 42 U.S.C.S. §1988;

6.   Award him costs and interest, including costs of suit;

7.   Award him prejudgment and post-judgment interest;

8.   Award him any such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES TRIABLE TO A JURY.

Plaintiff, Dennis Perkins,
By his attorney:

_____

/s/Kathryn M. Fallon
BBO:  631528
Kathryn M. Fallon, P.C.
2 Haven Street, Suite 207
Reading, MA  01867
781-942-3797
kathryn@attorneyfallon.com
Dated:  July 3, 2012