UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11206-GAO

DENNIS PERKINS,
Plaintiff,

v.

CITY OF ATTLEBORO, et al.,
Defendants.

ORDER ON REPORT AND RECOMMENDATION
September 17, 2013

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has filed a Report and Recommendation ("R&R") with respect to the defendants' motions to dismiss (dkt. nos. 26, 30). After carefully reviewing the pleadings, the parties' submissions, the R&R, and the plaintiff's objections, I agree with the magistrate judge's analysis and conclusions. I specifically note that despite the plaintiff's objection to the contrary, the magistrate judge properly considered the letter that the plaintiff submitted to the union. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (approving consideration of documents central to the alleged claims).

Accordingly, I approve and ADOPT the magistrate judge's recommendation in its entirety. The City defendants' Motion to Dismiss (dkt. no. 26) and the Union's Motion to Dismiss (dkt. no. 30) are GRANTED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DENNIS PERKINS,                )
                              )
            Plaintiff,         )
        v.                     )        CIVIL ACTION
                              )        NO. 12-11206-GAO
CITY OF ATTLEBORO, et al.,      )
                              )
            Defendants.        )

## REPORT AND RECOMMENDATION ON
## CITY DEFENDANTS' MOTION TO DISMISS

August 26, 2013

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff Dennis Perkins ("Perkins") is a Captain in the City of Attleboro's
Fire Department.  He was suspended for five days following an altercation on July 4,
2009 with another firefighter, the defendant Vincent Bailey.  Perkins contends, inter alia,
that the other defendant firefighters and the defendant International Association of
Firefighters Local 848 (the "Union") improperly interfered with the investigation of the
altercation and caused him to be suspended due to his opposition to then-Chief Ronald
Churchill's bid to remain as Chief for a year over the age of mandatory retirement.

Perkins has brought a seventeen-count Second Amended Complaint (Docket No.
10) ("Compl.") against the City of Attleboro, various firefighters in their individual and
professional capacities, and the Union, alleging violations of his federal constitutional

rights (Counts I-II, IV-VII), as well as violations of his state constitutional, statutory and common law rights. The City, on its own behalf and on behalf of all defendants except the Union (the "City defendants"), has filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. (Docket No. 26).[1] For the reasons detailed herein, this court finds that Perkins has failed to state a claim of a violation of his federal constitutional rights. Therefore, this court recommends to the District Judge to whom this case is assigned that the City defendants' motion to dismiss be ALLOWED, that Counts I, II, IV, V, VI and VII be dismissed, and that this court decline to exercise supplemental jurisdiction over the remaining state law claims.

## II.  STATEMENT OF FACTS

### Scope of the Record

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). In connection with its motion to dismiss, the City has attached a copy of a letter written by Perkins to the president of the Union dated July 3, 2009, which is referenced in the Complaint. (See Docket No. 26-2). The plaintiff has not disputed the authenticity of the letter, although he does argue that the City has not affirmatively established its authenticity. He also argues that either the letter should not be considered or the

---

[1] The Union has also brought a motion to dismiss (Docket No. 30), which is addressed in a separate decision.

defendants' motion to dismiss should be treated as a motion for summary judgment. For the reasons detailed herein, this court recommends that the letter be considered in the context of a motion to dismiss. There is no basis to convert the motion to one for summary judgment.

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). In the instant case, Perkins has made repeated references to the letter in his Complaint. (See, e.g., Compl. ¶¶ 58, 60, 62). In fact, the only statement that Perkins has identified in which he opposed the then-Chief's bid to remain in office past the mandatory retirement age is the letter of July 3, 2009. Accordingly, the letter is central to Perkins' claim that he was retaliated against for exercising his First Amendment rights. (See, e.g., id. ¶¶ 206-08). The letter should be considered in connection with the motion to dismiss.

Plaintiff relies on Berk v. Ascott Inv. Corp., 759 F. Supp. 245 (E.D. Pa. 1991), for the proposition that "the document must be 'incorporated by reference' into the Plaintiff's Complaint; a summary of the content or limited quotations do not constitute 'incorporation by reference.'" (See Pl. Opp. (Docket No. 33) at 3). Berk, however,

presents a very different factual scenario. In Berk, the court was assessing the sufficiency of a complaint in class action securities litigation. The plaintiffs had alleged that the defendants had made numerous misrepresentations in a number of documents, and had only summarized the alleged misrepresentations in the complaint. Id. at 249. The court declined to consider one of the documents, an Offering Memorandum, which had been attached to one of the defendants' briefs, because it was only one of a number of documents in which misrepresentations were allegedly made, and because it was not expressly incorporated by reference into the complaint. Id. Therefore, the court ruled that it did "not find that consideration of the Offering Memorandum at this point in the litigation will help resolve the motion to dismiss." Id. at 249-50.

In sharp contrast, in the instant case, the plaintiff has identified only one communication on which he relies, the communication is easily identifiable from the Complaint, and it is not necessary to parse the content of a long, complicated document to determine which part, or why, it is relevant to the plaintiff's claim. This is a situation, also recognized by the Berk court, where the authenticity of the document is not in dispute and it may appropriately be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Id. at 249 and cases cited.

Applying these principles, the facts relevant to the motion to dismiss are as follows.

## Background

-4-

Perkins was appointed as a permanent Firefighter/Paramedic for the City of

Attleboro Fire Department on July 24, 2000. (Compl. ¶ 53). He was promoted to the

position of Captain on December 1, 2002, and has held that position since then. (Id.

¶ 55). The defendant Ronald Churchill was the Fire Chief. (Id. ¶ 57). In 2009, Churchill

sought to retain his position as Chief notwithstanding the fact that he had attained the

maximum age for that position. (Id.).

On July 3, 2009, Perkins submitted a letter to the Union president opposing the

extension of Churchill's service. (Id. ¶ 58). In the letter he wrote:

> President Dubuc,
>
> Honorable Mayor Dumas has recently announced his support in
> regards to extending the cities [sic] fire chief's tenure for an additional year
> based on the cities [sic] forecasted financial challenges. I am strongly
> opposed.
>
> Chief Churchill has served with distinction for many years, but it
> [sic] time for a leadership change. The retirement laws governing group
> four employees clearly state that firefighters are not exempt from manda-
> tory retirement unless age is determined to be a non essential qualification.
> The stresses associated with the profession extend from the junior most
> firefighter to the highest ranking department representative as illustrated by
> annual loss data documenting 100-110 firefighter line of duty deaths each
> year. The majority of untimely deaths are secondary to coronary or other
> cardiovascular failures. The American Heart Association lists age as a
> significant risk factor in experiencing such an event. Therefore, age is an
> essential qualification.
>
> Chief Churchill actively participates in both interior and exterior
> management functions at a fire scene in addition to those stresses associated
> with his managerial obligations. For example, the chief bravely directed
> interior operations at the district court fire several weeks ago. Interior
> conditions were such that all members, including the chief, donned
> breathing apparatus.

Mayor Dumas cited the chief's leadership experience as a necessity to progress through the next fiscal year and groom a successor based on the results of a civil service exam. The promotion to fire chief exam was held last March, and upon certification will yield viable candidates ready and willing to assume the position. The process produces a list that extends beyond the requested years extension making an additional exam unwarranted. There would be no better time than the present to groom a successor. A year extension is unnecessary and will not change fiscal hardships that historically plague public service agencies.

City and state leaders are currently under severe financial constraints that require active leadership. A department head change will significantly reduce payroll output on the city side similar to early buyout programs. It is clear that savings is a priority for the city. Unions have been requested by city administrators for monetary concession and a hiring freeze instituted in an attempt to curb the current crisis. It would stand to reason with the availability of candidates that any effort to reduce city expenditures would be embraced. Union leaders should be critical of any action that increases the coffers of city administrators while such concessions are being demanded.

Union administrators should carefully consider their position on the issue. The ramifications of an extension foreshadow negative future happenings. It is not in the best interest of local 848 to aid the city in its efforts to seek an outside chief; it is not conducive to unionism to support obstacles that inhibit forward career movement; and it is incongruous to believe that the financial concessions demanded of city unions are necessary if monies are available to extend the chiefs [sic] tenure.

Mr. President, I am officially requesting the union issue a public opinion on the issue at hand. I understand that I am only one of many, but I propose the administration petition the Mayor, council, and legislative authorities in an effort to prevent an extension.

Fraternally,
Dennis Perkins

(Docket No. 26-2). Based on Civil Service Eligibility Lists effective during the period of

Churchill's extension of service until June 30, 2010, Perkins ranked second as a candidate

for promotion to Chief, and first as a candidate for promotion to Deputy Chief. (Compl. ¶¶ 65-66).

Despite his letter, Perkins contends that the Union "took a position contrary to the interests of its membership" in favor of Churchill's extension of service, and did not inform Perkins that it was assisting Churchill in his efforts to retain his position as Chief. (Id. ¶ 59). According to Perkins, the President of the Union, the defendant Brian Dubuc, told him when he received the letter that it would "only be harmful to the Plaintiff." (Id. ¶ 61). "Defendant Dubuc, Defendant Attleboro and Defendant Union were successful in their efforts to assist Defendant Churchill in his request to extend his service." (Id. ¶ 63). During his extended period in 2009, Churchill, who was aware of the letter, chose an individual to replace him as Chief who was ranked third on the Civil Service Eligibility List, below Perkins. (Id. ¶¶ 62, 67). Churchill retired as Chief in 2010, and the new Chief was appointed. (Id. ¶ 132).

### The Altercation of July 4, 2009

From 2007 until July 4, 2009, Perkins' regular assignment was to the Twin Village Fire Station. (Id. ¶ 71). On July 4, 2009, Perkins was assigned to fill-in for the regularly assigned Captain at the South Attleboro Fire Station. (Id. ¶ 72). Shortly before the early-morning roll call at the change of shifts, Perkins had rotated assignments for the shift employees. (Id. ¶ 73). The defendant Bailey did not want to perform his new assignment and "began a verbal altercation with the Plaintiff" during which Bailey "yelled, paced, muttered, and loudly expressed his disagreement over the assignment." (Id. ¶ 74).

-7-

Perkins and another Captain present during "Bailey's tantrum" tried to quiet him down, but were unsuccessful. (Id. ¶¶ 75-76). Bailey contacted defendant Deputy Chief Livesey on the morning of July 4, 2009 and was ordered to stay at the station. (Id. ¶ 77). Nevertheless, Bailey left the Fire Station and did not return for the rest of the day. (Id. ¶ 78). Instead, because he had been advised that he could be disciplined for his conduct, Bailey went to the Department headquarters with Steven Brennick and the defendant Walter Guertin – two Union officials. (Id. ¶ 79).

### The Challenged Investigation

The Deputy Chief of the Fire Department, the defendant Glen Livesey, was assigned the task of investigating Bailey's conduct. (Id. ¶ 80). His investigation revealed that there were only three witnesses to the incident: Captain David Hardman, Captain Charles Moore and defendant Craig Lander. (Id. ¶ 81). They were each ordered to provide a written statement about the incident. (Id.). Captain Moore and Captain Hardman immediately provided statements, which were generally consistent with Perkins' version of events. (Id. ¶¶ 82-83). Lander prepared two statements – one dated July 7, 2009 and one dated July 10, 2009. (Id. ¶ 85). These statements conflicted with the statements provided by the other witnesses and contained disparaging remarks about Perkins. (Id.). According to Perkins, in these statements, Lander falsely elevated the July 4th incident into a physical altercation between Perkins and Bailey, and included fabrications that Perkins had made comments to Bailey in the past regarding his wallet and shining his shoes. (Id. ¶ 89). In addition, at Livesey's request, Lander added

-8-

fabrications that he had observed Perkins take a phone out of Bailey's hand during the July 4, 2009 incident. (Id. ¶ 92). Bailey also did not provide his statement for several days and, after allegedly working on it with defendant Union officials, provided a statement which included numerous disparaging remarks about the plaintiff as well. (Id. ¶ 84). Prior to the July 4th incident, Perkins had been involved in disciplinary matters regarding Lander and Bailey in connection with safety and performance issues, although he had never worked with Lander. (Id. ¶¶ 86-87). Neither Lander nor Bailey had been disciplined by the City for "these serious safety and performance issues." (Id. ¶ 88).

According to Perkins, although a number of the defendant firefighters were not physically present at the altercation with Bailey, they wrote statements disparaging him which contained numerous false allegations. (Id. ¶¶ 97-98 (Guillette), ¶ 106 (Parham), ¶ 109 (Hasslehurst), ¶ 113 (Marcotte), ¶ 117 (Washington), ¶ 120 (Guertin), ¶ 128 (Wilson)). Perkins had previously reported some of the letter writers due to disciplinary issues and they harbored animosity towards him. (E.g., id. ¶¶ 100, 111, 124). Many of the letter writers were Bailey's friends. (See id. ¶ 131). Livesey and Churchill solicited statements from these defendants to "substantiate their improper investigation" and "because they knew said Defendants were predisposed to disparaging the Plaintiff." (Id.).

On July 11, 2009, Perkins met with defendant Livesey, who told the plaintiff that his career was in a "downward spiral." (Id. ¶ 137). Although Livesey made no indication that any racial tensions or offensive comments were at issue, Livesey advised Perkins that

he was being called a recluse and anti-social, and that he could not expect to be promoted. (Id.). He also accused Perkins of instigating a problem with Bailey in order to get another firefighter transferred to the South Attleboro station. (Id.).

On or about July 20, 2009, Livesey generated a computer printout discussing a "hostile work environment" which described physically threatening behavior occurring on the basis of race. (Id. ¶ 138). Thereafter, although the July 4th incident between Bailey and Perkins was not a racial conflict, meetings between the defendant Union and Attleboro officials resulted in it being escalated into a purported racial dispute. (Id. ¶ 139). Thus, Perkins contends, Livesey and Churchill, in coordination with the Union, transformed the investigation of Bailey's July 4, 2009 misconduct into an improper investigation of Perkins, for purposes of seeking disparaging letters about him from the defendants. (Id. ¶ 140). These adverse letters, which were collected by the defendants Wilson, Dubuc and Guertin, and disseminated to other members of the Fire Department, resulted in the adverse employment action and disciplinary action against Perkins. (Id. ¶¶ 141, 143, 145).

According to the plaintiff, the letters contained false allegations, were written by persons without personal knowledge of the events described therein, and raised claims about a "hostile work environment" although no such complaints had been made prior to the July 4th incident or Livesey's "hostile work environment" printout. (Id. ¶¶ 148-150). The City of Attleboro allegedly was aware of the improper investigation of the plaintiff, allowed it to go forward, and failed to conduct its own investigation despite repeated

requests by the plaintiff. (Id. ¶¶ 147, 151-53). Similarly, Livesey and Churchill allegedly failed to investigate the accuracy of the charges contained in the letters, although there was information easily available to refute the charges. (Id. ¶¶ 155-159).

Perkins contends that Attleboro and the Union acted in bad faith, recklessly and with malice because they should have known that the statements of the defendant letter writers were false and were intended to result in discipline of the plaintiff and to prevent him from any future promotional advancement in the Fire Department. (Id. ¶¶ 161-62). Moreover, between July 7, 2009 and July 24, 2009, the individually named defendants allegedly acted in concert to prepare the written defamatory statements about Perkins; and Attleboro and the Union, and Attleboro and the individually named defendants, acted in concert to gather, prepare, and obtain the written defamatory statements about Perkins. (Id. ¶¶ 163-65).

### Bailey's MCAD Complaint

On or around July 27, 2009, Bailey brought charges against Attleboro at the Massachusetts Commission Against Discrimination, allegedly making false accusations that made Perkins appear to be a racist. (Id. ¶¶ 167-68). Perkins contends that Attleboro provided protected personnel information and made several disparaging remarks about the plaintiff in its Position Statement to the MCAD without seeking Perkins' input or permission. (Id. ¶ 175). In addition, Attleboro failed to investigate Bailey's charges properly, and identified individual defendants as witnesses who were not present during the incident of July 4, 2009. (Id. ¶¶ 176-178). According to Perkins, by its actions,

-11-

Attleboro participated in the conspiracy and wrongful conduct of the individual defen-
dants, and utilized the MCAD process to further disparage the plaintiff. (Id. ¶ 179).

## Disciplinary Action Against Perkins

Attleboro, Churchill and Livesey allegedly refused to allow Perkins to have his
counsel present "during ambush interviews and investigatory meetings." (Id. ¶ 180).  On
July 28, 2009, Livesey prepared a report for Churchill, which included statements from
Perkins, as well as Bailey, Hardman, Moore, Lander, Brogan and Guertin. (Id. ¶ 169).
Churchill told the plaintiff that he was conducting a fact finding meeting with him on
August 3, 2009, but instead "conducted an ambush investigation of the Plaintiff," and in a
letter dated August 5, 2009, Churchill ordered the plaintiff's suspension for two tours of
duty, or the equivalent of one week. (Id. ¶¶ 170-71).  When Attleboro refused to meet
with the plaintiff to discuss the disciplinary action taken against him, Perkins filed a
formal appeal of the disciplinary action with the Commonwealth of Massachusetts Civil
Service Commission. (Id. ¶¶ 181-82).  A hearing was held before the Civil Service
Commission, at which testimony was taken. (Id. ¶ 183).[2]

Bailey was not disciplined for his actions on July 4th. Rather, Perkins alleges that
Attleboro paid Bailey to settle the MCAD claim. (Id. ¶¶ 185-86).  Moreover, despite the
fact that the plaintiff was not named as a party to the MCAD complaint, Attleboro, by
and through its Personnel Director, "continued to disparage the Plaintiff publicly,

---

[2] It is undisputed that the Civil Service Commission's decision, upholding the two-day
suspension, is now on appeal to the Massachusetts Superior Court. (See Docket No. 50).

including comments provided to the Attleboro Sun Chronicle in an article published on March 23, 2011, where, it once again, discussed without authorization the personnel action taken against the Plaintiff, commented that the Plaintiff harassed everyone, not just Bailey, and made other misrepresentations about the Plaintiff concerning Bailey's MCAD action, falsely made it appear for public consumption that the Plaintiff was found responsible for discrimination, and falsely made it appear for public consumption that the Plaintiff was involved in and bound by a confidential settlement." (Id. ¶ 187).

It is Perkins' contention that the adverse employment action taken against him by Attleboro was based on false accusations, conjecture and speculation, and that Attleboro failed to properly investigate the charges made against him. (Id. ¶¶ 189-93). He further contends that Churchill was predisposed to taking adverse action against him, and that the individual letter writers acted with malice and utter disregard to the truthfulness of their accusations, and in order to prevent Bailey from being disciplined. (Id. ¶¶ 194-96).

Additional facts will be provided below where appropriate.

### III.  ANALYSIS - OVERVIEW

#### Causes of Action

The City defendants are seeking to dismiss all counts of the Complaint alleging violations of federal law, and have asked this court to decline to exert supplemental jurisdiction over the state law claims. Specifically, Perkins has raised the following claims.

In Count I, brought pursuant to 42 U.S.C. § 1983, Perkins contends that all the defendants violated his First Amendment rights, and in Count II, also brought pursuant to 42 U.S.C. § 1983, he claims that specific defendants retaliated against him for exercising his First Amendment rights.[3]  Both of these counts raise the same issue with respect to the City defendants, namely whether Perkins' letter to the Union president was protected by the First Amendment.

Counts IV-VI are also brought pursuant to 42 U.S.C. § 1983.  In Count IV, against all defendants, Perkins contends that the investigation which resulted in his suspension violated his due process rights, and in Count V, he alleges that all the defendants violated his right to privacy "by publicly disclosing, exchanging, sharing and discussing the Plaintiff's confidential personnel information." (Compl. ¶ 250).  Count VI, which is against the City, is labeled only "violation of civil rights," and therein Perkins reiterates his complaints relating to the so-called investigation and the City's failure to stop the investigation. (Id. ¶¶ 265-276).  Finally, in Count VII, Perkins charges all the defendants with conspiring to violate his civil rights in violation of 42 U.S.C. § 1985. (See id. ¶ 278).

The remaining counts of the Complaint allege state law causes of action.  They include the following:

> Count III (all defendants)      Retaliation

---

[3] Count II is brought against the City of Attleboro, Churchill, Livesey, the Union and the Union officers Dubuc, Guertin and Wilson.

| | |
|---|---|
| Count VIII (all defendants) | Conspiracy |
| Count IX (all defendants) | MCRA |
| Count X (City) | Violation of Statutory Privacy Rights |
| Count XI (Union) | Violation of Statutory Privacy Rights |
| Count XII (all defendants) | Defamation |
| Count XIII (all defendants) | Intentional Interference with Contractual Relationship |
| Count XIV (City) | Negligence |
| Count XV (City) | Negligent Supervision and Training |
| Count XVI (all defendants) | Intentional Infliction of Emotional Distress |
| Count XVII (City) | Negligent Infliction of Emotional Distress |

The plaintiff is seeking compensatory and punitive damages.

### Standard of Review - Motion to Dismiss

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. Cooperman, 171 F.3d at 46. Dismissal is only appropriate if the complaint, so viewed, fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief. Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). "'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.'" Id. (quoting

-15-

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)

(internal citations omitted)). "'Second, only a complaint that states a plausible claim for

relief survives a motion to dismiss.'" Id. (quoting Iqbal, 556 U.S. at 679, 129 S. Ct. at

1949). "This second principle recognizes that the court's assessment of the pleadings is

'context-specific,' requiring 'the reviewing court to draw on its judicial experience and

common sense.' '[W]here the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged – but it has not

show[n] – that the pleader is entitled to relief.'" Id. (quoting Twombly, 556 U.S. at 679,

129 S. Ct. at 1950) (internal citations omitted; alterations in original)).

    As detailed herein, applying these principles compels the conclusion that the City

defendants' motion to dismiss be allowed.

## Standard of Review - § 1983 Claim

    Perkins has brought claims under 42 U.S.C. § 1983 alleging violations of his

constitutional rights.  Section 1983 "is not itself a source of substantive rights, but merely

provides a method for vindicating federal rights elsewhere conferred." Graham v.

Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989)

(quotations and citation omitted).  It provides:

>       Every person who, under color of any statute, ordinance, regulation,
>       custom, or usage, of any State or Territory or the District of
>       Columbia, subjects, or causes to be subjected, any citizen of the
>       United States or other person within the jurisdiction thereof to the
>       deprivation of any rights, privileges, or immunities secured by the
>       Constitution and laws, shall be liable to the party injured in an action
>       at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

"A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). In the instant case, the City defendants do not dispute that they were acting under color of state law in connection with the events at issue. However, they contend that their conduct did not deprive the plaintiff of his constitutional rights. For the reasons detailed below, this court agrees.

## IV.   FIRST AMENDMENT CLAIMS

Counts I and II of the Complaint are dependent on whether Perkins' letter of July 3, 2009 is protected speech under the First Amendment. The Supreme Court's cases involving the First Amendment "have sought both to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions. . . .   Underlying [the] cases has been that premise that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" Garcetti v. Ceballos, 547 U.S. 410, 420, 126 S. Ct. 1951, 1959, 164 L. Ed. 2d 689 (2006) (quoting Connick v. Myers, 461 U.S. 138, 154, 103 S. Ct. 1684, 1694, 75 L. Ed. 2d 708 (1983)). As the First Circuit recently explained:

"Public employees do not lose their First Amendment rights to speak on matters of public concern simply because they are public employees." *Curran v. Cousins,* 509 F.3d 36, 44 (1st Cir.2007). Instead, "[t]he First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate." *Rutan v. Repub. Party of Ill.,* 497 U.S. 62, 76, 110 S. Ct. 2729, 111 L. Ed. 2d 52 (1990). We have articulated a three-part test for determining whether a challenged employment action violated a public employee's First Amendment right to freedom of speech. First, the court examines " 'whether the employee spoke as a citizen on a matter of public concern.'" *Curran,* 509 F.3d at 45 (quoting *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)). Second, the court must "balance ... the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 44 (quoting *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)). Third, the employee must "show that the protected expression was a substantial or motivating factor in the adverse employment decision." *Id.* at 45. If the employee demonstrates that the speech was a substantial or motivating factor in the employer's retaliatory action, the employer may avoid liability by showing that it would have reached the same decision even absent the protected conduct. *Id.*

Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 765-66 (1st Cir. 2010) cert. denied

Miranda-Marin v. Rodriguez-Garcia, 131 S. Ct. 1016, 178 L. Ed. 2d 829 (2011).

Thus, the threshold inquiry is whether Perkins (1) spoke as a citizen and (2) spoke on a matter of public concern. O'Connell v. Marrero-Recio, No. 12-2191, 2013 WL 3782233, *4 (1st Cir. July 22, 2013). These are issues of law which must be decided by the court. Curran v. Cousins, 509 F.3d 36, 45 (1st Cir. 2007) (citing, inter alia, Connick, 461 U.S. at 148 n.7, 103 S. Ct. at 1690 n.7). Because this court finds that Perkins was

-18-

not speaking as a private citizen, and the letter was not sent to further discourse on a matter of public concern, Perkins' speech was not protected by the First Amendment. Therefore, this court recommends that Counts I and II be dismissed.

## Perkins Was Not Speaking as a Private Citizen

While the standard for determining whether an individual is speaking as a private citizen is well-established, the parties have not identified any other cases involving a union-employer-employee triangle, where the employee was speaking both as an employee and as a union member. In this court's view, the most analogous situation would be where an employee filed a grievance about events that transpired in the workplace. As detailed herein, in such circumstances the employee is generally found not to be speaking as a private citizen.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421, 126 S. Ct. at 1960. Therefore, it does not violate the First Amendment to restrict speech "that owes its existence to a public employee's professional responsibilities" since such a restriction "does not infringe any liberties the employee might have enjoyed as a private citizen." Id. at 421-22, 126 S. Ct. at 1960. "The proper inquiry" into whether speech was made pursuant to an employee's professional duties "is a practical one" and "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform[.]" Id. at 424-25, 126 S. Ct. at 1961-62.

-19-

Applying these principles, "circuit courts have concluded that speech that government employers have not expressly required may still be 'pursuant to official duties,' so long as the speech is in furtherance of such duties." <u>Weintraub v. Board of Ed. of City of New York</u>, 593 F.3d 196, 202 (2d Cir.), <u>cert.</u> <u>denied</u> 131 S. Ct. 444, 178 L. Ed. 2d 344 (2010) and cases cited. <u>See also</u> <u>Decotiis v. Whittemore</u>, 635 F.3d 22, 32 (1st Cir. 2011) (identifying non-exclusive list of factors which can be considered in determining if speech was made pursuant to official responsibilities); <u>Williams v. Johnson</u>, 537 F. Supp. 2d 141, 151-52 (D.D.C. 2008) (employee's testimony before D.C. Council was not as a private citizen even though testifying "was not part of her regular, routine duties" and was not included in her job description).

In the instant case, Perkins' letter to the Union president was written in furtherance of his role as a union member and as a member of the Fire Department, and concerned issues relating to the management of the Department and opportunities for advancement within the Department.  Given his position as a Captain of the Fire Department, management of the Department was clearly relevant to his job responsibilities. Moreover, Perkins' concerns about advancement opportunities clearly related to his job responsibilities.  As the <u>Weintraub</u> court held in dismissing a § 1983 claim based on a teacher's filing of a formal grievance challenging the school administration's refusal to discipline a student who threw books during class, "Weintraub's grievance was 'pursuant to' his official duties because it was 'part-and-parcel of his concerns' about his ability to 'properly execute his duties[.]'" <u>Weintraub</u>, 593 F.3d at 203 (citation omitted).  Where,

-20-

as here, Perkins was speaking to the head of the Union of which he was a member, about a potential change in policy relating to advancement within and management of the Department in which he was employed in a supervisory capacity, and his complaint was purportedly based on his concerns about the most efficient way to run the department (both as a matter of economics and safety), this court concludes that the communication was "pursuant to" his official duties. See also Curran, 509 F.3d at 45-46 (statements made by corrections officer to his superior during a discussion of official department policy were not made as a citizen but were made in the course of his duties within the department, and had no First Amendment protection).

Moreover, in the instant case the fact that Perkins elected to write to his Union president, and not publically assert his challenge to the proposed modification of the mandatory retirement law, further counsels against a finding that he was acting as a private citizen. As the Weintraub court held further in language relevant to the present case:

> The lodging of a union grievance is not a form or channel of discourse available to non-employee citizens, as would be a letter to the editor or a complaint to an elected representative or inspector general. Rather than voicing his grievance through channels available to citizens generally, Weintraub made an internal communication pursuant to an existing dispute-resolution policy established by his employer, the Board of Education. *Cf. Boyce v. Andrew*, 510 F.3d 1333, 1343-44 (11th Cir.2007) (finding that the "form and context" of the employees' complaints, which were made directly to supervisors and were not "sent to an outside entity," weighed against First Amendment protection). As with the speech at issue in *Garcetti*, Weintraub could only speak in the manner that he did by filing a grievance with his teacher's union as a public

-21-

> employee. *Cf. Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir.2008)
> (compiling cases "holding that when a public employee raises
> complaints or concerns up the chain of command at his workplace
> about his job duties, that speech is undertaken in the course of
> performing his job"). His grievance filing, therefore, lacked a
> relevant analogue to citizen speech and "retain[ed no] possibility" of
> constitutional protection. *Garcetti*, 547 U.S. at 423, 126 S. Ct. 1951.

Weintraub, 593 F.3d at 204. Similarly, in the instant case Perkins did not voice his

concerns "through channels available to citizens generally." His communication with the

Union president was, in effect, a complaint or concern about the management of the Fire

Department. Consequently, this court concludes that his letter should be deemed to have

been undertaken in the course of performing his job. Therefore, Perkins was not acting as

a private citizen, and his letter was not entitled to First Amendment protection.

### Perkins Was Not Speaking About a Matter of Public Concern

Perkins' First Amendment claims must fail for the additional reason that he was

not speaking on a matter of public concern. "Whether an employee's speech involves a

'matter of public concern' is a case-specific, fact-dependent inquiry." Curran, 509 F.3d

at 46. When the topic of the speech relates to a matter of "inherent public concern" such

as "official malfeasance, abuse of office, and neglect of duties[,]" no further inquiry is

required. Id. Otherwise, "the court must examine the form and context of the speech,

with an eye to (1) whether the community has in fact manifested a legitimate concern in

the subject, and (2) whether the employee's speech suggests a subjective intent to

contribute to public discourse." McGunigle v. City of Quincy, — F. Supp. 2d — , No.

12-10852-JLT, 2013 WL 2112011, at *4 (D. Mass. May 16, 2013) (internal punctuation

and citations omitted).  In the instant case, Perkins was writing on the limited issue of

whether the Chief should be exempt from mandatory retirement for one year, and he was

advocating for use of the existing Civil Service examination results.  The issue was not

one of "inherent public concern" as it did not involve improper conduct or allegations of

wrongdoing on the part of the Chief.  An examination of the "content, form and context"

of the letter "as revealed by the whole record" compels the conclusion that it was not

related to a matter of public concern.  Connick, 461 U.S. at 147-48, 103 S. Ct. at 1690.

While exemption from the mandatory retirement laws required public approval,

and could have been presented as a topic for public debate, Perkins elected not to do so.

See Curran, 509 F.3d at 45-46 (statements made to superiors concerning official

department policy were not protected, while statements posted by employee on union

website open to the public were protected).  Perkins chose not to communicate with

anyone in a decision-making role, or to express his views in a public forum.  Rather,

Perkins' decision to send the letter only to Dubuc, and to sign it "Fraternally," precludes

any suggestion that he acted with "a subjective intent to contribute to any . . . public

discourse."  O'Connor v. Steeves, 994 F.2d 905, 914 (1st Cir. 1993), and cases cited.[4]

---

[4] This court recognizes that the Supreme Court has held that a private statement made to
an employer may be protected.  Givhan v. W. Line Consol. Sch. Dist., 439 U.S. 410, 415-16, 99
S. Ct. 693, 696-97, 58 L. Ed. 2d 619 (1979).  However, such private communications are often
conducted in the course of an employee's official duties.  See Garcetti, 547 U.S. at 420-21, 126
S. Ct. at 1959-60 (while internal memorandum could be protected speech, it was not because it
was made pursuant to employee's official duties).  As detailed above, Perkins' letter also was
made in furtherance of his official duties.  This factor, combined with the fact that he did not
evince an intent to engage in a public discourse, compels the conclusion that the speech was not
protected.

Furthermore, the focus of Perkins' letter was not on matters of public concern. While there were references to Perkins' belief that older firefighters are more likely to have heart attacks and that it would somehow be more cost-effective to replace the Chief, the gist of the letter was "primarily directed to remedy a personal situation[.]"  See Taylor v. Town of Freetown, 479 F. Supp. 2d 227, 236 (D. Mass. 2007) (where letter to Board of Selectmen contained accusations of misconduct, but was principally directed to remedy a personal situation, the "letter predominantly does not address matters of public concern and is not protected speech."). In the letter, Perkins clearly advocates for the selection of a "viable candidate" from the results of the fire chief exam, and urges the Union to be concerned with "forward career movement." As the Complaint makes clear, Perkins would stand to gain if the existing test results were used, since he was ranked second for promotion to Chief and first as a candidate for promotion to Deputy Chief. (Compl. ¶¶ 65-66). In light of the fact that the letter was primarily concerned with Perkins' personal situation, it is not entitled to First Amendment protection. Contrast Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 586-87, 747 N.E.2d 729, 741 (2001) (while complaints about failure to enforce no-smoking statute at police station contained elements of a personal grievance, the "decisive portion" of the complaint raised issue of public concern for failure to comply with the law).

In sum, there is nothing in Perkins' letter to Dubuc which further's "the public's interest in receiving the well-informed views of government employees engaging in civic discussion." Garcetti, 547 U.S. at 419, 126 S. Ct. at 1958. Perkins' "comments were

unprotected, as they involved internal complaints about the management of the Department that did not rise to matters of public concern." Corbin v. Gillen, 839 F. Supp. 2d 376, 382 (D. Mass. 2011), and cases cited.  Therefore, this court recommends that Counts I and II be dismissed.[5]

## V. **PROCEDURAL DUE PROCESS**

In Count IV of his Complaint, Perkins alleges a violation of his Fourteenth Amendment procedural due process rights.  (See Compl. ¶ 230: "The Plaintiff's due process rights were adversely affected by the improper disciplinary investigation and ambush hearings conducted by Defendant Churchill and Defendant Livesey.").  This Count should be dismissed because Perkins has been provided with all the procedural due process to which he was entitled, including pre-deprivation meetings with Chief Churchill and Deputy Chief Livesey, and post-deprivation appeals of his suspension.

> The first step in determining whether a plaintiff has a due process claim is to identify a specific liberty or property interest affected by the alleged governmental action. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972).  The next step, if a liberty or property interest has been affected, is to evaluate what process was due the plaintiff, and whether he was afforded it. *Id.; see also Mathews v. Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

---

[5] In light of this court's conclusion that Perkins did not speak as a private citizen on a matter of public concern, this court will not address the other parts of the three part test to determine whether an employee has stated a claim of a violation of his First Amendment rights. See Rodriguez-Garcia, 610 F.3d at 765-66. In particular, Perkins' contention that his speech did not disrupt the operation of the Fire Department does not save his claim since he cannot satisfy the first part of the test to determine if an employee's speech was protected.  (See Pl. Opp. at 6-7).

Wayfield v. Town of Tisbury, 925 F. Supp. 880, 882 (D. Mass. 1996). In the instant case, Perkins contends that he "has asserted plausible claims for deprivation of his rights and property interests, particularly, his property interests in employment, continued employment, employment opportunities and his property rights in his professional reputation." (Pl. Opp. at 9). This is not disputed by the City defendants for purposes of their motion to dismiss. Therefore, in order to prevail on his § 1983 claim, Perkins must establish that "he was deprived of his liberty or property interest *without due process of law.*" Id. at 885 (emphasis in original). See also Board of Regents v. Roth, 408 U.S. 564, 573, 92 S. Ct. 2701, 2707, 33 L. Ed. 2d 548 (1972) (due process requires that the plaintiff be accorded an opportunity to refute the charges where his "good name, reputation, honor, or integrity" was besmirched by the defendants). As detailed herein, based on the allegations of the Complaint, Perkins' due process rights were not violated.

The basic guarantee of procedural due process is that, "before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 13 (1st Cir. 2011) (quoting Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) (additional citations omitted)). "There is no mechanical formula by which the adequacy of state procedures can be determined. To the contrary, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" Amsden, 904 F.2d at 753 (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972)).

In the instant case, according to the Complaint, Livesey gathered written statements from the plaintiff and others (Compl. ¶¶ 81-82), and the plaintiff met with Livesey and Churchill prior to any adverse employment action being taken. (See id. ¶¶ 137, 170).[6] After the disciplinary action was imposed, the plaintiff appealed to the Commonwealth of Massachusetts Civil Service Commission, and a hearing was held. (Id. ¶¶ 182-83). It is undisputed that Perkins has appealed the Commission's decision to the Superior Court. See Mass. Gen. Laws ch. 31, §§ 41-44 (describing appeal process for Civil Service employees). In light of the pre-deprivation and post-deprivation opportunities to be heard, Perkins' procedural due process rights were satisfied. See Gonzalez-Droz, 660 F.3d at 13 (discussing when pre-deprivation hearings are required).

Perkins' argument is that he could not have been afforded due process when "the motives behind the investigation were impure, impulsive, improper and invidious." (Pl. Opp. at 9). However, whether the disciplinary action "was itself erroneous is beside the procedural due process point." Amsden, 904 F.2d at 753 (citing Carey v. Piphus, 435 U.S. 247, 266, 98 S. Ct. 1042, 1053, 55 L. Ed. 2d 252 (1978)). See also Gonzalez-Droz, 660 F.3d at 13 ("Whether the deprivation was, in fact, justified is not an element of the procedural due process inquiry."). Moreover, Perkins has not alleged that those involved in the post-deprivation review were similarly improperly motivated. The Complaint fails

---

[6] These steps appear to be consistent with the Grievance Procedure detailed in the applicable collective bargaining agreement. (See Docket No. 50).

to state a claim that Perkins' procedural due process rights were violated. Therefore, this court recommends that Count IV of the Complaint be dismissed.

## VI. <u>RIGHT TO PRIVACY</u>

In Count V of his Complaint, Perkins alleges that the defendants are all liable under 42 U.S.C. §§ 1983 and 1988 for violating his Fourteenth Amendment right to privacy by "publicly disclosing, exchanging, sharing and discussing the Plaintiff's confidential personnel information." (Compl. ¶ 250). The City defendants have moved to dismiss this claim on several grounds. First they contend that the "personnel information" has not been identified. (City Mem. (Docket No. 27) at 17). Furthermore, the City defendants argue (<u>id.</u> at 17-18) that "[w]hether the Fourteenth Amendment includes a right against the disclosure of private information is an unsettled and hotly contested question of law." <u>Coughlin v. Town of Arlington</u>, No. 10-10203-MLW, 2011 WL 6370932, at *13 (D. Mass. Dec. 19, 2011) (citing <u>Nat'l Aeronautics & Space Admin. v. Nelson</u>, 131 S. Ct. 746, 764-65, 178 L. Ed. 2d 667 (2011) (Scalia, J. concurring)). Finally, the City defendants contend that given the uncertain state of the law, the individual defendants are entitled to qualified immunity. (City Mem. at 18). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). Because any

Fourteenth Amendment right to be free from disclosure of personal information was not well-established as of the time of the discipline of Perkins, the defendants contend that the individual City defendants should be entitled to qualified immunity. (See City Mem. at 18). See also Maldonado, 568 F.3d at 269 ("the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional").

Perkins has not addressed this Count in his opposition to the motion to dismiss. (Docket No. 33). Consequently, any opposition to the dismissal of this claim should be deemed waived. Rodriguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) ("It should go without saying that we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument."). Moreover, the City defendants are correct that the First Circuit has not ruled on whether a right of privacy as alleged in the Complaint exists, and that, therefore, the individual defendants should be entitled to qualified immunity. Finally, this court agrees that Perkins has not identified the personnel information at issue, and its substance cannot be gleaned from the Complaint. Therefore, this court recommends that Count V be dismissed.

## VII.  GENERAL VIOLATION OF CIVIL RIGHTS

Count VI of Perkins' Complaint, directed to the City of Attleboro, purports to state a claim of violation of the plaintiff's civil rights pursuant to 42 U.S.C. §§ 1983 and 1988. However, no specific constitutional rights are identified, and this count seems to be a general reiteration of the other counts of the Complaint.  Perkins raises no new arguments

to support this count of the Complaint. (See Pl. Opp. at 11). Therefore, for all the

reasons that the other counts alleging violations of 42 U.S.C. § 1983 fail to state a claim,

Count VI should be dismissed as well. See also Chiang v. Skeirik, 582 F.3d 238, 244 (1st

Cir. 2009) ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," are insufficient to state a claim) (quotation omitted).

## VIII. CONSPIRACY

Count VII of the Complaint is brought against all the defendants pursuant to 42

U.S.C. §§ 1983, 1985 and 1988. Perkins alleges therein that the defendants engaged in a

conspiracy to violate his "property rights" and his First and Fourteenth Amendment

rights. (Pl. Opp. at 10). Thus, he argues:

> The actual acts of the Defendants in the context of this conspiracy
> have been set forth with specificity in the Plaintiff's SAC [Second
> Amended Complaint], including organizing and orchestrating
> disparaging letters to be written by the Plaintiff, writing disparaging
> letters about the Plaintiff, and as to the individually named
> Defendants, entwining their actions with the actions of Defendant
> officials in the context of a disciplinary investigation, and in the
> context of the Defendant Union, entwining its activities with that of
> the Defendant officials.
>
> The Defendants, including the Defendant Union, and the Defendant
> Union officials, organized with one another, communicated with one
> another, shared written communications with one another, acting in
> concert with one another with the actual knowledge of the Defendant
> City. Moreover, as a member of the Defendant Union, Plaintiff was
> entitled to be afforded the protections of the Defendant Union;
> however, the Defendant Union assisted in the conspiracy to harm the
> Plaintiff and deprive him of his rights. The Plaintiff has clearly
> alleged that the Defendants jointly participated together in violating
> his rights.

(Id.). For the reasons detailed herein, this court recommends that this claim be dismissed, as Perkins has failed to assert a conspiracy cognizable under the civil rights laws.

Although Perkins references §§ 1983, 1985 and 1988 in his Complaint, the parties agree that this conspiracy claim is based solely on 42 U.S.C. § 1985. (See Pl. Opp. at 10-11). 42 U.S.C. § 1985(3) prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." "To state a claim under § 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (citing Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338 (1971)). Moreover, a plaintiff may recover "only when the conspiratorial conduct of which he complains is propelled by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Id. (quoting Griffin, 403 U.S. at 102, 92 S. Ct. at 1798). Thus, Perkins "must allege facts showing that (1) the defendants conspired against [him] because of [his] membership in a class, and (2) the criteria defining the class are invidious." Id. at 4. Perkins has not satisfied these requirements.

As an initial matter, Perkins has not alleged that he was discriminated against because of his membership in any class, much less the type of class which is recognizable under the civil rights laws. "[A] class, to be cognizable, must be identifiable by reference to 'something more than . . . (the members') desire to engage in conduct that the § 1985(3) defendant disfavors.'" Id. at 5 (quoting Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269, 113 S. Ct. 753, 759, 122 L. Ed. 2d 34 (1993)). The mere fact that Perkins opposed Chief Churchill's desire to remain in office past the mandatory retirement age is insufficient to describe a "cognizable class" and, therefore, his claim under § 1985(3) must be dismissed. Id. at 6 (allegation that plaintiff was part of a group of persons who supported other persons "opposed to the politics of the old guard" too indefinite, and does not state a class under § 1985(3)).

Moreover, to the extent that Perkins was arguably part of a "class" who were politically opposed to Churchill, his claim is not one which is actionable under § 1985. "[T]his statute offers 'no remedy' for discrimination based on political affiliation[.]" Soto-Padro v. Pub. Bldgs. Auth., 675 F.3d 1, 4 (1st Cir. 2012) (citing Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 109 (1st Cir. 2008)). Therefore, Perkins' opposition to the Chief would not support a § 1985 claim, even if it was the cause of the alleged conspiracy against him. See also Brown v. Reardon, 770 F.2d 896, 905-06 (10th Cir. 1985) (§ 1985(3) claim requires "competent evidence of some racial or other class-based invidious discriminatory animus[;]" fact that plaintiffs were opposed to the political conduct of the defendants does not establish either that plaintiffs were members of a

-32-

recognized class or "class-based discrimination sufficient to invoke § 1985(3).").[7]  Since

Perkins has not established that the defendants conspired against him due to his

membership in a class, or the existence of either racial or other class-based invidious

discriminatory animus, his conspiracy claim should be dismissed.

## IX.  STATE LAW CLAIMS

This court recommends that if the federal claims are dismissed, the District Court

decline to exercise supplemental jurisdiction over the state law claims pursuant to 28

U.S.C. § 1367(c)(3).  This course is particularly appropriate since the case is at an early

stage.  See Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996)

(recognizing that federal court may appropriately decline to exercise its supplement

jurisdiction over state law claims "if the federal-question claim is eliminated early in the

proceedings[.]").  The City defendants have not addressed the sufficiency of the

pleadings of the state law claims, and this court will decline to do so as well.

## X.  CONCLUSION

---

[7] Perkins' relies on the dissenting opinion of Judge McKay in Brown v. Reardon for the proposition that class-based animus does not need to be established.  (See Pl. Opp. at 11).  This reliance is misplaced.  Judge McKay asserted that it remains an open question whether racial or other class-based animus must be shown in the case of a conspiracy involving state actors. Brown, 770 F.2d at 911 (McKay, J. concurring part and dissenting in part).  However, it is well established in the First Circuit "that to state a claim under § 1985(3) in respect to conspiracies involving public officials, private actors, or both, plaintiffs must allege that the conduct complained of resulted from an invidiously discriminatory class-based animus."  Aulson, 83 F.3d at 4.

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the City defendants' motion to be dismiss (Docket No. 26) be ALLOWED, that Counts I, II, IV, V, VI and VII be dismissed, and that this court decline to exercise supplemental jurisdiction over the remaining state law claims.[8]

                                          /s / Judith Gail Dein
                                        Judith Gail Dein
                                        U.S. Magistrate Judge

---

[8]     The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DENNIS PERKINS,                      )
                                     )
            Plaintiff,               )
      v.                             )          CIVIL ACTION
                                     )          NO. 12-11206-GAO
CITY OF ATTLEBORO, et al.,           )
                                     )
            Defendants.              )

## REPORT AND RECOMMENDATION ON
## UNION'S MOTION TO DISMISS

August 26, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff Dennis Perkins ("Perkins") is a Captain in the City of Attleboro's

Fire Department.  He was suspended for five days following an altercation on July 4,

2009 with another firefighter, the defendant Vincent Bailey.  Perkins contends, inter alia,

that the other defendant firefighters and the defendant International Association of

Firefighters Local 848 (the "Union") improperly interfered with the investigation of the

altercation and caused him to be suspended due to his opposition to then-Chief Ronald

Churchill's bid to remain as Chief for a year over the age of mandatory retirement.

Perkins has brought a seventeen-count Second Amended Complaint (Docket No.

10) ("Compl.") against the City of Attleboro, various firefighters in their individual and

professional capacities, and the Union, alleging violations of his federal constitutional

rights (Counts I-II, IV-VII), as well as violations of his state constitutional, statutory and common law rights. The City, on its own behalf and on behalf of all defendants except the Union (the "City defendants"), filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. (Docket No. 26). On this date, this court issued a Report and Recommendation ("City R&R") recommending that the City defendants' motion to dismiss be allowed, that Counts I, II, IV, V, VI and VII be dismissed for failure to state a claim, and that the court decline to exercise its supplemental jurisdiction over the state law claims. (See City R&R (Docket No. 53)).

This matter is presently before the court on the Union's motion to dismiss. (Docket No. 30). The Union has moved to dismiss all the federal constitutional claims against it (Counts I, II, IV, V and VII)[1] for the same reasons as the City defendants, as well as on some additional grounds applicable only to the Union. For the reasons detailed in the City R&R, which will not be repeated herein, this court recommends that the Union's motion to dismiss be allowed as well. This Report and Recommendation will be limited to the arguments uniquely applicable to the Union's motion to dismiss.

Unlike the City defendants, who only asked that the court decline to exercise supplemental jurisdiction over the state law claims, the Union has moved to dismiss the state law claims brought against it for failure to state a claim upon which relief can be granted. For the reasons detailed herein, this court recommends that the District Court

---

[1] The Union is named in all the federal constitutional claims brought against the City defendants except for Count VI, which is brought only against the City of Attleboro.

decline to exercise its supplemental jurisdiction over the state law claims. Therefore, this court will not address the merits of the Union's motion to dismiss these claims.

For all the reasons detailed herein and in the City R&R issued on this date, this court recommends to the District Judge to whom this case is assigned that the Union's motion to dismiss (Docket No. 30) be ALLOWED, that Counts I, II, IV, V and VII of the Second Amended Complaint be dismissed, and that the court decline to exercise its supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## II. STATEMENT OF FACTS

The Statement of Facts found in Section II of the City R&R is hereby incorporated by reference, as if fully set forth herein.

## III. ANALYSIS OF CONSTITUTIONAL CLAIMS

The Analyses found in Sections III through IX of the City R&R are hereby incorporated by reference, as if fully set forth herein. For the reasons detailed therein, this court concludes that Perkins has failed to state a claim of a violation of his federal constitutional First Amendment rights (Counts I and II), his Fourteenth Amendment right to procedural due process (Count IV), and his Fourteenth Amendment right to privacy (Count V). In addition, Perkins has failed to allege a viable conspiracy claim under 42 U.S.C. § 1985 (Count VII). Therefore, these Counts should be dismissed to the extent that they are directed to the Union as well.

## IV. UNION AS STATE ACTOR

"A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). In the instant case, the Union denies that it was acting under color of state law and, consequently, has moved to dismiss the claims brought pursuant to 42 U.S.C. § 1983 on those grounds. However, this court finds that Perkins has alleged sufficient facts to state a claim that the Union was acting in concert with the state actors. Therefore, this is not a basis to dismiss the federal constitutional claims against the Union.[2]

A person may be charged as a state actor "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S. Ct. 2744, 2754, 73 L. Ed. 2d 482 (1982). Accord Gonazalez-Morales v. Hernandez-Arencibia, 221 F.3d 45, 49 (1st Cir. 2000). With respect to a claim of joint action with state officials, it is sufficient if the defendant "is a willful participant in joint activity with the State or its agents." Casa Marie, Inc. v. Superior Court, 988 F.2d 252, 259 (1st Cir. 1993) (quotation omitted). Moreover, "[a]n actual conspiracy between a

---

[2] For the reasons detailed in the City R&R, this court has concluded that Perkins has failed to state a claim that his federal constitutional rights were violated. The present inquiry as to whether the Union acted under color of state law does not need to be addressed if the District Judge agrees that the plaintiff has not alleged a constitutional violation.

state [actor] and a party attempting a plainly prohibited act would constitute 'state action.'" Id. See also Alexis v. McDonald's Rests. of Mass., Inc., 67 F.3d 341, 351 (1st Cir. 1995) ("Where a private individual is a defendant in a section 1983 action, there must be a showing that the private party and the state actor jointly deprived plaintiff of her civil rights."). Of course, conclusory allegations of a conspiracy are insufficient to state a claim. Rather, the plaintiff must support his claim "with references to material facts." Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977).

In the instant case, Perkins has asserted sufficient facts at this juncture to state a claim that the Union and state actors acted jointly. For example, he has alleged that the Union worked with the City and Chief Churchill to obtain the extension of Chief Churchill's service, without informing the plaintiff of its position. (Compl. ¶¶ 59-60, 63). He also has alleged that Union officials worked with defendant Bailey to help him circumvent being disciplined for his actions on July 4, 2009, and to shift the focus of the investigation being conducted by Deputy Chief Livesey to Perkins, presumably in violation of and in retaliation for plaintiff's exercise of his First Amendment rights. (See, e.g., id. ¶¶ 79, 84, 121, 123). According to Perkins, Union officials and Atteboro officials met together and decided to twist the July 4, 2009 incident into a racial incident, which eventually resulted in Perkins' reputation being besmirched. (See, e.g., id. ¶¶ 139, 140). Finally, but without limitation, Perkins has asserted that the Union and the City coordinated the letter writing campaign which resulted in Perkins' temporary suspension and which was designed to preclude his advancement within the Fire Department. (See,

-5-

e.g., id. ¶¶ 143, 145, 149, 164-65, 202-03).  While these allegations are strenuously

denied, they must be accepted as true for purposes of the Union's motion to dismiss.

Perkins has alleged sufficient facts to establish that the Union was "a willful participant

in joint activity with the State or its agents."  Casa Marie, Inc., 988 F.2d at 259 (quoting

United States v. Price, 383 U.S. 787, 794, 86 S. Ct. 1152, 1157, 16 L. Ed. 2d 267 (1966)).

Therefore, Perkins' claims against the Union should not be dismissed on the basis that the

Union was not acting under color of state law.  See Wagenmann v. Adams, 829 F.2d 196,

210-11 (1st Cir. 1987) (upholding jury determination that private individual was liable

under § 1983 for warrantless arrest of plaintiff where circumstantial evidence was

sufficient to support finding that private individual possessed and exerted influence over

police and conspired with them to have plaintiff arrested).

## V.  **PROCEDURAL DUE PROCESS**

In Count IV of his Complaint, Perkins has alleged that his procedural due process

rights were violated.  For the reasons detailed in the City R&R, this court has concluded

that this claim must fail, as Perkins was awarded all the pre-deprivation and post-

deprivation hearings to which he was entitled.  Therefore, this court has recommended

that this count be dismissed as to all defendants.

The Union has also moved to dismiss Count IV for the additional reason that the

Union had no control over the procedural due process granted to the plaintiff.  (See

Docket No. 30 at 12).  This court agrees.  While Perkins has alleged that the Union acted

jointly with the City and Fire Department officials, see supra, he also has alleged clearly

that defendants Churchill and Livesey directed any investigation and were the ones who provided the plaintiff with an opportunity to be heard before the disciplinary sanction was imposed. (See, e.g., Compl. ¶¶ 81-82, 137, 170). Any post-deprivation proceedings were conducted pursuant to the civil service laws. See Mass. Gen. Laws ch. 31, §§ 41-44. Therefore, Perkins has not alleged that the Union was involved in effectuating (or violating) Perkins' procedural due process rights, and Count IV should be dismissed against the Union for this additional reason as well.

## VI.   STATE LAW CLAIMS

The Union has also moved to dismiss the plaintiff's state law claims for failure to state a claim upon which relief should be granted. However, this court recommends that the federal court decline to exercise its supplemental jurisdiction over these claims. Therefore, the sufficiency of these pleadings will not be addressed.

Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise its supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which is has original jurisdiction[.]" As the court explained in Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249 (1st Cir. 1996):

> In a federal-question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion. See 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline adjudication of lingering state-law claims after it has dismissed "all claims over which it has original jurisdiction"). In deciding whether or not to retain jurisdiction on such an occasion, the trial court must take into account concerns of comity, judicial economy, convenience,

> fairness, and the like. *See Rodriguez v. Doral Mortgage Corp.,* 57
> F.3d 1168, 1177 (1st Cir.1995); *Vera-Lozano v. International*
> *Broadcasting,* 50 F.3d 67, 70 (1st Cir.1995); *Newman v. Burgin,* 930
> F.2d 955, 963-64 (1st Cir.1991). While dismissal may sometimes be
> appropriate if the federal-question claim is eliminated early in the
> proceedings, *see, e.g., Martinez v. Colon,* 54 F.3d 980, 990 (1st
> Cir.), *cert. denied,* 516 U.S. 987, 116 S. Ct. 515, 133 L. Ed. 2d 423
> (1995), each case must be gauged on its own facts. The preferred
> approach is pragmatic and case-specific. Thus, in "an appropriate
> situation, a federal court may retain jurisdiction over state-law
> claims notwithstanding the early demise of all foundational federal
> claims." *Rodriguez,* 57 F.3d at 1177.

Roche, 81 F.3d at 256-57.

Where, as here, "the litigation has not proceeded to a stage" where litigating the

matter in the state court "would cause undue delay or duplicative effort[,]" it is

appropriate for the federal court to decline to exercise its supplemental jurisdiction over

the state law claims. See Tarr v. Town of Rockport, 405 F. Supp. 2d 75, 78 (D. Mass.

2005). This is especially appropriate here, since this court's recommendations with

respect to the dismissal of the federal claims were based on the requirements of pleading

federal constitutional claims, and did not address the sufficiency of the state law claims.

See id. (court remands state law issues after dismissing federal-law claims since "[t]his

Court has not ruled on defendants' motions for judgment on the pleadings and

defendants' counsel concedes that minimal extra work would be required in order to file

the same dispositive motions in state court."). "[C]oncerns of comity, judicial economy,

convenience, fairness, and the like" compel the conclusion that the federal court decline

to exercise jurisdiction over the state law claims. See Roche, 81 F.3d at 257.

## VII. <u>CONCLUSION</u>

For all the reasons detailed herein and in the City R&R, this court recommends to

the District Judge to whom this case is assigned that the Union's motion to dismiss

(Docket No. 30) be ALLOWED, that Counts I, II, IV, V and VII of the Second Amended

Complaint be dismissed, and that the court decline to exercise its supplemental jurisdic-

tion over the state law claims pursuant to 28 U.S.C. § 1367(c)(3).[3]

/ s / Judith Gail Dein

Judith Gail Dein

U.S. Magistrate Judge

---

[3] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. <u>See Keating v. Sec'y of Health & Human Servs.</u>, 848 F.2d 271, 275 (1st Cir. 1988); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 604-05 (1st Cir. 1980); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>see also Thomas v. Arn</u>, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). <u>Accord Phinney v. Wentworth Douglas Hosp.</u>, 199 F.3d 1, 3-4 (1st Cir. 1999); <u>Henley Drilling Co. v. McGee</u>, 36 F.3d 143, 150-51 (1st Cir. 1994); <u>Santiago v. Canon U.S.A., Inc.</u>, 138 F.3d 1, 4 (1st Cir. 1998).